Burke, J.
One Ivan Jerome, who was required to stand trial for various sex offenses, failed to appear on the appointed day and forfeited his bail. On the following day the allegedly defamatory article appeared in the defendant’s paper, Newsday. Respondent sues for libel claiming* that the article identifies him as the man who aided Jerome “ in jumping his bail and assisted him to escape the consequences of his alleged criminal actions.” He avers that the statements are false and that as a result he has been held up to public contempt, disgrace and ridicule and has been irreparably injured in his calling as a police instructor and criminologist.
After reversing a judgment of Special Term, which dismissed the complaint, the Appellate Division certified the following question for our review: ‘ ‘ Does the complaint state a cause of action? ”
Unless we find the statements in the article to be nonlibelous as a matter of law, the question must be answered in the affirmative (Balabanoff v. Hearst Cons. Pub., 294 N. Y. 351).
. The general rule, as we stated in Nicholas v. Item Publishers (309 N. Y. 596, 600-601), is that ‘“A writing is defamatory'— that is, actionable without allegation or proof of special damage—if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number in the community, even though *136 it may impute no moral turpitude to him And to that listing of the defamatory should he added a writing which tends to disparage a person in the way of his office, profession or trade.”
It is for the court, however, to decide whether a publication is capable of the meaning ascribed to it. (Crane v. New York World Tel. Corp., 308 N. Y. 470, 479-480; Julian v. American Business Consultants, 2 N Y 2d 1, 14.) The canons are well known that where the words are clear and plain, the court must determine whether they are libelous or nonlibelous; and whether the innuendo is necessary. (O’Connell v. Press. Pub. Corp., 214 N. Y. 352; Morrison v. Smith, 177 N. Y. 366; Seelman, Law of Libel and Slander in New York, par. 436, p. 426.) The admitted purpose of an innuendo is to explain matter that is insufficiently expressed. Its office is to point out the libelous meaning of the words used. If the article is not susceptible of a libelous meaning, then innuendo cannot make it libelous. In Fry v. Bennett (5 Sandf. 54, 65) the court stated the rule in this manner: “ In brief, the question which an innuendo raises, is, in all cases, a question not of fact, but of logic. It is, simply, whether the explanation given is a legitimate conclusion from the premise stated; and to determine this question, must be, in all cases, the exclusive province of the court ’ ’. (See, also, Seelman, op. cit., supra, pars. 421, 430; Hays v. American Defense Soc., 252 N. Y. 266; O’Connell v. Press Pub. Corp., supra.) The innuendo, therefore, may not enlarge upon the meaning of words .so as to convey a meaning that is not expressed (Gurtler v. Union Parts Mfg. Co., 285 App. Div. 643, 644-645, affd. 1 N Y 2d 5).
The solution of the legal question always depends on the particular phraseology used in the purported libelous statement. The article in issue here relates the details of the Jerome case from the time of the discovery of the sex offenses to his failure to appear in court for trial. The article then proceeds to give an account of Jerome’s activities just prior to his disappearance. After reporting that Jerome checked into a small hotel on the upper east side of New York City under an assumed name about six weeks prior to his disappearance, the relevant parts of the article read as follows:
1 ‘ Last Thursday a clerk saw a strange man help Jerome carrying his luggage out of the Hotel. The *137 stranger was identified by police as John D. Tracy, a former New York City policeman who had been hired by Roekmore as an investigator to aid in Jerome’s case. * * *
“ Police were unable to learn where Jerome and Tracy took the luggage. But the next day, Jerome, Roekmore, and Tracy showed up at Murray’s New York office at 3 PM for a conference on the upcoming trial. Murray said he had been in daily phone contact with Jerome. * * *
11 After the meeting with Murray, police learned Rock-more and Jerome parted company with Tracy and left for Roekmore’s New York office. Roekmore believes that he was the last person to see Jerome. * * *
“ The last person to hear from Jerome before he vanished was Tracy. He said Jerome phoned him Friday evening to cancel an appointment they had made to go to court together Monday. Jerome explained he had made other arrangements.”
Standing alone these statements obviously are not defamatory. Respondent, however, relies on the innuendo pleaded in the complaint to draw a libelous meaning from the article.
Applying the cited principles of law to the construction of the statement urged on us by respondent, we are constrained to agree with Special Term that “ The pleaded innuendo is strained, unreasonable and unjustified ”. It does not explain any statement in the article, but adds an entirely new and independent thought that finds no support in the article.
The article, of course, must be read as a whole and the words and phrases must be construed together in context. (Julian v. American Business Consultants, supra.) Reading the article before us reasonably and taking the words in their natural import, we find that it is unfair to conclude that the article either states or implies anything that could subject the respondent to contempt, aversion or induce any unsavory opinion or affect him in his calling as a criminologist or police instructor. It is a chronological account of the activities of Jerome and his legal staff during a four-day period. The statements of Roekmore, one of Jerome’s attorneys, and of respondent, Tracy, given in answer to inquiries by the police and accurately *138 reported in the paper, readily negate the interpretation the respondent seeks to read into the report. The article does not suggest that Jerome received assistance or advice in connection with his failure to appear at the trial. The fact that respondent contends that he did not assist Jerome with his luggage merely demonstrates the falsity of the statement, not that it is defamatory. Though the report may be false and probably offensive, it is not actionable. (See Nichols v. Item Publishers, 309 N. Y. 596, 601, 602, supra; Prosser on Torts [2d ed., 1955], p. 575; 1 Harper and James, Torts [1956], p. 349.) The statement that Tracy had assisted a client in carrying luggage out of a hotel several days before the trial, in the light of the further reports that ‘ ‘ Rockmore believes he was the last person to see Jerome” and “He [Tracy] said Jerome phoned him Friday evening to cancel an appointment they had made to go to court together Monday” because as “Jerome explained he had made other arrangements ”, is not susceptible of the meaning read into it by respondent.
Since there is no basis in fact nor tenable position in law to support the alleged innuendo, the article may not be regarded as defamatory of the respondent under any fair construction. The question certified, therefore, is answered in the negative and the order of the Appellate Division reversed and the judgment of Special Term reinstated.