■ GEORGE W. MEADOWS, II, et al., Respondents, v TAFT BROADCASTING COMPANY, INC., et al., Appellants. — Order unanimously modified and, as modified, affirmed, with costs to plaintiffs, in accordance with the following memorandum: Defendants appeal from an order denying their motion for summary judgment dismissing the complaint which alleges defamation in a telecast aired on August 6, 1980 and seeks actual damages of $100,000 and punitive damages of $100,000 for each plaintiff. Plaintiff George W. Meadows, II (Meadows) is a funeral director and a shareholder of plaintiff Meadows Brothers Funeral Home, Inc. Defendant Taft Broadcasting Company, Inc. (Taft) is the owner of a television station which operates over Channel 2 from Buffalo, New York. Defendant James Willi (Willi) is Taft's news director, and defendant L.B. Lyon (Lyon) is Taft's investigative reporter. In a broadcast on July 7, 1980, Lyon published an account of fraudulent practices related to burial expenses charged to survivors of deceased welfare recipients. The telecast included an interview of Meadows in which he admitted that he had charged survivors sums in excess of $150, which is the maximum amount authorized to be charged by the Erie County Department of Social Services. Lyon quoted Meadows as also admitting to having filed false certifications with the department in order to receive reimbursements of $650, which is the sum ordinarily paid by the department for such burial expenses. During the August 6, 1980 telecast, upon which this suit is based, a picture of Meadows was shown as the following was said: (Announcer): "NewsCenter Two has learned there may be a connection between a fatal fire in Hamburg and our investigation into funeral fraud. We have more in this exclusive report from NewsCenter Two's L. B. Lyon." (Lyon): "Police are checking to see if the death of Eileen Pries, killed in a Hamburg fire Sunday, is linked to a NewsCenter Two report on funeral fraud. Several members of the Pries family told arson investigators that Eileen Pries had been threatened. She had apparently been told to keep quiet about anything she knew regarding overpayments on funerals. Mrs. Pries worked for the County Veterans Affairs office and handled reimbursements to funeral directors for the burial of destitute veterans. Eileen Pries apparently showed concern when NewsCenter Two exposed a funeral director who admitted he was ripping people off. A relative told arson investigators Eileen Pries said after watching the report * * * 'If my house ever blows up you'll know who did it' and made reference to the funeral director mentioned in the story. This brought Hamburg police and arson investigators to the NewsCenter Two studios today to review our videotapes of the welfare funeral fraud report." (Detective Jerry Jensen, Hamburg police): "We're still taking stuff to the Central Police Laboratory for examination." (Lyon): "Are you aware of any threats that have been placed on Mrs. Preis's [*sic*] life?" (Detective Jerry Jensen, Hamburg police): "We have received information, those are being investigated at the present time." (Lyon): "There was suspicion that old cellulose nitrate film, which is highly explosive, may have caused the explosions and fatal fire. That theory has not been thrown out but the fact that Mrs. Preis [*sic*] had been threatened while an investigation into funeral fraud is going on has become very suspicious." In moving for summary judgment, defendants argue that plaintiffs have failed to show that the content of the telecast was false; have failed to meet their burden as public figures to show

that defendants acted with knowledge of the falsity of the telecast or with reckless disregard for its falsity; have otherwise failed to demonstrate that defendants acted in a grossly irresponsible manner; have failed to show actual damages and that punitive damages may not be recovered. It is for the court in the first instance to determine whether the words of the telecast are susceptible to the particular defamatory meaning ascribed to them by plaintiffs (*Tracy v Newsday, Inc.,* 5 NY2d 134). Plaintiffs contend that the televised statements imply that Meadows committed homicide by arson and was a police suspect in the death of Eileen Pries. Taken as a whole, and measured by the effect they would have on the average reader (*James v Gannett Co.,* 40 NY2d 415, 419-420), the statements are susceptible to that interpretation and are defamatory (see *Russo v Padovano,* 84 AD2d 925, 925-926). The telecast may also be viewed as containing accusations that plaintiff Meadows made threats against a public officer charged with the duty of disbursing public funds for funeral expenses. Since Meadows denies ever having made threats and denies any connection with an arson or with the death of Eileen Pries, issues of fact are presented as to the falsity of the televised statements. Questions of credibility cannot be determined on a motion for summary judgment (*Glick & Dolleck v Tri-Pac Export Corp.,* 22 NY2d 439). While the telecasts of both July 7, and August 6, 1980 involved matters of public concern, it may not be said that plaintiffs are public figures. Nor may they be characterized as limited purpose public figures (see *Gertz v Robert Welch, Inc.,* 418 US 323, 346). Any controversy which occurred between Lyon and Meadows in the first telecast was of short duration and it was Lyon, not Meadows, who sought the interview which was published in the first telecast (see *James v Gannett Co.,* 40 NY2d 415, *supra; Greenberg v CBS Inc.,* 69 AD2d 693). It is plaintiffs' burden, therefore, to demonstrate that in gathering the information reported in the August 6, 1980 telecast, defendants acted in a grossly irresponsible manner (see *Gertz v Robert Welch, Inc., supra; Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196). In that connection, Lyon, at examination before trial, professed little or no recall concerning his sources and how he obtained the information. Thus an issue is presented which may not summarily be resolved. Plaintiffs' claim for punitive damages is, of course, dependent upon a showing that defendants acted with actual malice (*Gertz v Robert Welch, Inc., supra*). Plaintiffs allege that defendants knew or should have known that the televised statements were false, and were made willfully, wantonly and with actual malice. We recognize that if the requirement of showing actual malice is to be an effectual aid in promoting First Amendment freedom, the evidence of it should be clear and convincing (*Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 379, cert den 434 US 969). It is also well established, however, that actual malice is not a subject which readily lends itself to summary disposition (*Hutchinson v Proxmire,* 443 US 111; see *Davis v High Soc. Mag.,* 90 AD2d 374; *Di Lorenzo v New York News,* 81 AD2d 844). It cannot be gainsaid that Lyon made here what may be viewed as very serious charges against Meadows and in doing so, made little or no effort to authenticate the veracity of his report. Given all of the circumstances thus far demonstrated, it would be premature to dismiss the punitive damage claims. In our view, an issue is presented as to whether defendants acted with knowledge of the falsity of the report or with reckless disregard for its falsity. As to actual damages, defendants do no more than raise a question of fact by claiming that the business losses concededly suffered by plaintiffs should be viewed as resulting from the first telecast rather than from the telecast alleged to be defamatory. In any event, the actual damage claim is sufficiently alleged and need not be further supported on this motion (see *Hogan v Herald Co.,* 84 AD2d 470, affd 58 NY2d 630). Finally, we agree with defendants' claim that there has been no showing of misconduct on

the part of Willi (see *Karaduman v Newsday, Inc.,* 51 NY2d 531). The cause of action against him must be dismissed. (Appeal from order of Supreme Court, Erie County, Gossel, J. — summary judgment.) Present — Dillon, P. J., Callahan, Doerr, Denman and Moule, JJ.