Leandro P. **RIZZUTO** and Conair Corporation, Plaintiffs,

v.

The **NEXXUS PRODUCTS COMPANY,** Jheri Redding, Vance Publishing Corporation and Service Publications, Inc., Defendants.

No. 84 Civ. 7879.

United States District Court,
S.D. New York.

Aug. 4, 1986.

---

6. *See* Footnote 4.

Field, Lomenzo & Turret, P.C., New York City, for plaintiffs; David A. Field, Kevin J. Nolan, of counsel.

Townley & Updike, New York City, for defendants; Andrew L. Hughes, Harry T. Walters, of counsel.

EDWARD WEINFELD, District Judge.

Plaintiffs, Leandro P. Rizzuto, and Conair Corporation ("Conair"), of which Rizzuto is the chief executive officer, instituted this action charging they were libelled by statements contained in two advertisements in trade journals. The defendants are The Nexxus Products Company ("Nexxus") engaged, as is Conair, in the manufacture and distribution of hair shampoo, conditioner and hair products throughout the United States; Jheri Redding, chief executive officer of Nexxus, at whose instance the advertisements were published; and the publishers of the two journals in which the advertisements appeared, Service Publications, Inc., publisher of American Hairdresser Salon Owner, ("American Hairdresser") and Vance Publishing Corporation, publisher of Modern Salon ("Modern Salon"). Each plaintiff seeks damages in the sum of $15,000,000 allegedly sustained by reason of the claimed false and libellous publications. The defendants move for summary judgment pursuant to Fed.R. Civ.P. 56(c).[1]

Redding, now 78 years of age, for more than five decades has been a recognized leader as a formulator of hair care products, including shampoos, conditioners, rinses and permanent wave solutions. At various times he has conducted business on his own or in association with others. In 1957 Redding and another formed a California partnership to develop and formulate hair care and health products which were to be licensed for manufacture and distribution by others. The partnership functioned under the name of Jheri Redding Products Company and used Redding's name in connection with the sale of its products. In 1959 the partnership was dissolved and a corporation formed under the name of Jheri Redding Products, Inc., in which Redding was to acquire a one-third stock interest. The corporation similarly used Redding's individual name, variants thereof, such as "Jheri Redding Prod-

ucts," "Jheri Redding Products Co.," "Jheri Redding Products Company" and his script signature on hair care products distributed by it to the hair dressing industry. Redding asserts that although he agreed during the partnership's existence to execute at some later date a consent to the use of his name on products formulated by him, "to the best of [his] recollection" he never executed such a written consent. He also asserts that a document filed in the United States Patent Office on November 22, 1960 by Jheri Redding Products, Inc. to register the trademark "Jheri Redding's" which purports to bear his signature consenting to the use of his name, is either a forgery or was fraudulently transposed from some document signed by him during his partnership relationship. On November 21, 1960, one day prior to the filing of the application in the Patent Office, Redding and his wife served a "Notice of Recission" upon Jheri Redding Products, Inc. and its stockholders on the ground that their agreement which included the consent to the use of his name by Jheri Redding Products, Inc. was procured by fraud. However, the certificate of registration filed in the Patent Office remained in effect despite the "Notice of Recission."

After the termination of his relationship to the aforesaid partnership and the corporation, in the succeeding years Redding was a principal in a number of other companies, all of which used his name on products formulated by him. During this period Jheri Redding Products, Inc., with which he was no longer associated, also used the trade name "Jheri Redding" on many of its hair care and related products.

In 1973 Conair acquired all the stock of Jheri Redding Products, Inc. which in 1979 was merged into Conair and became a division of Conair. Conair thereby acquired as part of its purchase the registered trademark "Jheri Redding's," including the script representation thereof and the good will attaching thereto. Conair has since

---

**1.** The defendants also moved to dismiss the complaint under Rule 12. Since the parties submitted affidavits in support of and in opposi-

tion to the motion, they are agreed that the motion is ripe for disposition under Rule 56. *See* Plaintiffs' Brief, at 12.

maintained laboratories in Edison, New Jersey known as Jheri Redding Laboratories, where it has developed products, many of which are distributed under the name Jheri Redding Products.

In 1979 Redding formed the defendant Nexxus Products Company ("Nexxus") as a family enterprise. It is not disputed that Nexxus became a highly successful company in the hair products business and that Redding's association with it as the formulator of its products is a significant part of its success. Similarly, it is not disputed that Conair has marketed a successful line of hair care products using on some of them the trade name "Jheri Redding." A feature of the industry in which the litigants compete is the styling and packaging of their respective products generally attempting to imitate the styling or packaging of a competitor's successful product.

In the early 1980's Jheri Redding formulated a variety of hair care products which were marketed by Nexxus packaged with a trade design and the use of double "X's" as a symbol on its advertising and brochures. Soon thereafter in 1981, Conair developed hair care products for sale to beauty parlors, which utilized the name "Extra" and were packaged, styled and designed to compete with Nexxus' products. These products were not introduced into the market until late 1982. In conformity with the common industry practice for manufacturers "to come out with new and imitative products to compete for the lucrative hair-care market,"[2] Conair's Extra line had a large "X" in the background and Nexxus' contained two "X's."[3] Conair's products were and are distributed almost entirely through independent dealer distributors. Conair also licensed other companies to use the Jheri Redding trademark and to indicate that the products were formulated at its "Jheri Redding Laboratories."

Redding and Nexxus, based upon the deliberate and imitative packaging and styling of plaintiffs' products, charge that plaintiffs thereby encouraged and gave credence to false statements by representatives of distributors in the industry that the Conair products were formulated by Jheri Redding at the Jheri Redding Laboratories, with the result that much confusion existed as to who in fact was the formulator and distributor of the products delivered to the consumer. Depositions of salon operators and others in the industry attest to the confusion in the trade as to who was the formulator of the competing products.

Conair, of course, asserts that it had the right to use the name Jheri Redding and variants thereof by virtue of its acquisition of Jheri Redding Products, Inc. stock in 1973 and its merger in 1979 into Conair. It denies it made or authorized any of the false statements as charged by defendants or that it encouraged its representatives or distributors to do so. Conair further asserts that it has no control over the independent distributors or jobbers who buy its products or their selling practices and thus it is not responsible for such false statements about Redding and Nexxus. Defendants respond that since in some instances plaintiffs licensed others to use the trademark Jheri Redding on products distributed by them, they as licensors must bear responsibility for false advertising and statements circulated by the licensees.

With the issue as to the ownership of the trade name "Jheri Redding" unresolved, despite various lawsuits in the California state courts by their predecessors, none of the litigants to this action resorted to the courts to obtain a definitive final legal adjudication as to their respective rights to use the trade name "Jheri Redding."

Conair and Nexxus each continue to market hair care products in competition with another using the name Jheri Redding or its variants and the "X's" on the packaging. That distributors to the trade as well as ultimate purchasers of the competing

---

**2.** Rizzuto Aff., para. 20.

**3.** Rizzuto asserts that the "Extra" line was introduced into the market in late 1982 and that he

"developed the name 'Extra' when I saw the name on the mudflap of a truck" while driving on the highway. *See* Rizzuto Aff., para 11.

products were and are confused as to their source cannot seriously be disputed. Indeed, Conair's decision to style one of its products, Extra, imitative of the styling of defendants' product served to add to the confusion. Nexxus decided, in the words of Jheri Redding, to advertise so as to "set the record straight" and "to get the truth to the trade so that the beauty salon owners could exercise an informed judgment if they wished to use products actually formulated by" him.[4]

It is against the foregoing history of the relationship of the parties, their competitive and prominent positions in the industry and other factors which led to the advertisements that the defendants' motion for summary judgment is to be considered. All defendants in support of their motions for summary judgment rely primarily upon the constitutional defense under *New York Times Company v. Sullivan*[5] and its progeny. Further, since this is a diversity action as to which the New York State substantive law of libel applies,[6] they advance defenses of truth of the facts contained in the advertisements and that other matters are opinions fairly expressed.

The advertisements were published in the two defendant trade journals, Modern Salon and American Hairdresser, in December 1983 in the form of a message to those engaged in the hair-care industry, and are similar in factual content except for several changes in the American Hairdresser advertisement, effected at the instance of that periodical's management. They were distributed nationwide. The Modern Salon advertisement bears the headline "DON'T BE CONNED BY HOT AIR." KNOW YOUR XX'S" and continues:

> Are you tired of unscrupulous sales people lying to you? So am I!
> I haven't been associated with Jheri Redding Products Company for almost 25 years. Yet, here they are again—using

my name—telling you this is my new company—WELL IT ISN'T! Jheri Redding Products Company is a registered trademark with the U.S. Government. I can't get the Conair Company to stop using it—and I offered to buy the company (Jheri Redding Products) in 1979 and they would not sell.

So ... here we go again—another company trying to RIP YOU OFF!

For the record ...

"Jheri Redding Laboratories" has nothing to do with me.

For the record ...

Conair owns the Jheri Redding Products Company—I DON'T!

For the record ...

My family owns Nexxus Products Company. I formulate the products for Nexxus and ONLY Nexxus.

For the record ...

The next time some lying salesperson tells you something about Mr. Jheri Redding, show him this ad ... and throw him out.

For the record ...

What can you do about it? Call Lee Rizzuto—he owns Conair and Jheri Redding Products Company (201) 287–4800 and tell him to stop trying to ...

RIP YOU OFF!!

> signed (Jheri Redding)
> President, Director of Research
> Nexxus Products Company

The American Hairdresser advertisement omitted the lead "DON'T BE CONNED BY HOT AIR! and below the line, "KNOW YOUR XX'S" also omitted "Are you tired of unscrupulous sales people lying to you? So am I." And after the statement "I haven't been associated with Jheri Redding Products Company for almost twenty-five years," which appears in both advertisements, the American Hairdresser advertisement does not contain the next sentence

---

**4.** Jheri Redding Aff., para. 20.

**5.** 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

**6.** The parties are in agreement that New York law applies. *See Davis v. Costa-Gavras,* 580

F.Supp. 1082, 1091–93 (S.D.N.Y.1984); *Grass v. News Group Publications, Inc.,* 570 F.Supp. 178, 185 (S.D.N.Y.1983); *Rudin v. Dow Jones & Co., Inc.,* 510 F.Supp. 210, 216–17 (S.D.N.Y.1981).

that is in the Modern Salon advertisement, to wit, "Yet, here they are again—using my name—telling you this is my new company—WELL IT ISN'T." Also omitted is the next succeeding sentence. "So ... here we go again—another company trying to RIP YOU OFF!" Finally, in the second column the word "lying" is omitted and entirely omitted is the paragraph "What can you do about it? Call Lee Rizzuto—he owns Conair and Jheri Redding Products Company ... and tell him to stop trying to "RIP YOU OFF!!" Instead, the American Hairdresser advertisement concludes "DON'T LET THEM RIP YOU OFF!"

The plaintiffs contend that both publications are false; are of and concerning Rizzuto; and although Rizzuto's name is not mentioned in the American Hairdresser advertisement those engaged in the hair dressing industry understood that it referred to him, as if he had been named as in the instance of the Modern Salon advertisement, particularly since both were issued to the trade at or about the same time. Plaintiffs further assert that each publication is libellous per se as to each of them because the words "conned," "rip off," and "lying" as commonly understood, accuse plaintiffs of stealing and defrauding their customers, as well as the public, and with unethical conduct—in totality, the words as used are "accusations of activity on the part of the plaintiffs that is criminal and a gross violation of business ethics."[7] Finally plaintiffs allege the defendants act-

ed with actual malice toward them. Accordingly, plaintiffs contend that the issues are for jury determination. In further pressing that a genuine issue of fact precludes the grant of summary judgment, plaintiffs rely upon their disavowal that they participated in the independent distributors' circulation of false statements about Nexxus products or about Jheri Redding, and accordingly assert there was no valid basis for the statements in the advertisements.

The defendants dispute that the publications contain false statements; that they are of and concerning plaintiffs; that they are libellous per se; or that they were published with actual malice. Defendants, in further resisting plaintiffs' claims, urge that the critical language contained in the advertisements upon which plaintiffs rely to establish defamation are expressions of opinion which are entitled to absolute immunity from liability under the first amendment.[8]

 The plaintiffs concede that they are public figures in the hairdressing and hair products industry; therefore their action is governed by the constitutional principles first enunciated in *New York Times Company v. Sullivan.*[9] Thus to prevail, they not only must prove falsity of any alleged defamatory statement,[10] but in addition establish by clear and convincing evidence that in publishing the articles the defendants acted with "actual malice," that

7. *See* Plaintiffs' Brief, at 18. Plaintiffs' contention that "rip off" is libellous per se as connoting criminal conduct, based upon the ruling of our Court of Appeals in *Cianci v. New Times Publishing Co.,* 639 F.2d 54 (2d Cir.1980), is far fetched. The factual situation of that case is so markedly different from that of this case, it bears no resemblance to this case. In *Cianci,* the publication charged the Mayor of Providence, Rhode Island, with the crime of rape and subsequently to procure the victim's silence through payoffs, an additional crime. The publication in haec verba not only charged plaintiff with rape, a particularly heinous crime, but gave lurid details of its alleged commission. Such a case has not the slightest relationship to the innuendo here urged by plaintiffs of criminal and unethical conduct.

8. *See Trump v. Chicago Tribune Co.,* 616 F.Supp. 1434, 1435 (S.D.N.Y.1985); *McManus v. Doubleday & Co.,* 513 F.Supp. 1383, 1385 (S.D.N.Y. 1981); *see also Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974); *Davis v. Ross,* 754 F.2d 80, 85–86 (2d Cir.1985); *Hotchner v. Castillo-Puche,* 551 F.2d 910, 913 (2d Cir.), *cert. denied,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977).

9. 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

10. *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 490, 95 S.Ct. 1029, 1043, 43 L.Ed.2d 328 (1975); *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 380, 397 N.Y.S.2d 943, 950, 366 N.E.2d 1299, *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977).

is, with knowledge they were false or with reckless disregard of whether or not the statements were true or false.[11] To establish reckless conduct there must be sufficient evidence to permit the conclusion that defendants in fact entertained serious doubts as to the truth of the publications.[12]

That the defendants move under the summary judgment rule, Fed.R.Civ.P. 56(c), does not relieve plaintiffs of their burden of meeting the clear and convincing evidence requirement,[13] particularly since discovery on both sides is complete.[14] The standard is midway between the fair preponderance rule in civil cases and beyond a reasonable doubt in criminal cases.[15] It may be met by circumstantial evidence of a defendant's state of mind—"either subjective awareness of probable falsity or actual intent to publish falsely."[16] Plaintiffs do not satisfy their burden of proof if their evidence is merely colorable or is not significantly probative.[17] To defeat a defendant's motion for summary judgment, the evidence advanced by plaintiffs must be such that a reasonable jury could find malice with convincing clarity.[18] The ultimate question on this motion for summary judgment, as recently stated by the Supreme Court, is whether plaintiff has offered sufficient concrete and substantive evidence so that "a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not."[19] The Court emphasized that in ruling on the summary judgment motion, "the judge must view the evidence presented through the prism of the substantive evidentiary burden."[20]

■ We first consider the issue with respect to the motions made by the two defendant trade publications. Even assuming the falsity of the statements and that they were of and concerning the plaintiffs, there is upon this record not the slightest evidential fact to support plaintiffs' burden that the publisher defendants printed them with actual malice or "entertained serious doubts" as to the truth of the material.[21]

**11.** *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964); *see also Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 327–28, 94 S.Ct. 2997, 3000–01, 41 L.Ed.2d 789 (1974); *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 133–34, 87 S.Ct. 1975, 1980, 18 L.Ed.2d 1094 (1967); *Herbert v. Lando,* 781 F.2d 298, 305 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986).

**12.** *See St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). *See also Beckley Newspapers Corp. v. Hanks,* 389 U.S. 81, 82–83, 88 S.Ct. 197, 198–99, 19 L.Ed.2d 248 (1967); *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 153, 87 S.Ct. 1975, 1990, 18 L.Ed.2d 1094 (1967); *Garrison v. Louisiana,* 379 U.S. 64, 74–75, 85 S.Ct. 209, 215–216, 13 L.Ed.2d 125 (1964); *Simmons Ford, Inc. v. Consumers Union of United States, Inc.,* 516 F.Supp. 742, 746 (S.D. N.Y.1981).

**13.** *Anderson v. Liberty Lobby, Inc.,* — U.S. —, —, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (U.S. June 25, 1986); *Herbert v. Lando,* 781 F.2d 298, 305 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986).

**14.** *Herbert v. Lando,* 781 F.2d 298, 305 & n. 3 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986). The Supreme Court has held that the presence of actual malice is a question of law. *Bose Corp. v. Consum-*ers Union of United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). This case, however, involved a finding of liability after completion of a bench trial.

**15.** *Yiamouyiannis v. Consumers Union of United States, Inc.,* 619 F.2d 932, 940 (2d Cir.), *cert. denied,* 449 U.S. 839, 101 S.Ct. 117, 66 L.Ed.2d 46 (1980).

**16.** *Id.*

**17.** *Anderson v. Liberty Lobby, Inc.,* — U.S. —, —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (per curiam) and *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).

**18.** *Anderson v. Liberty Lobby, Inc.,* — U.S. —, —, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

**19.** *Id.*

**20.** *Id.*

**21.** *See St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); *Herbert v. Lando,* 781 F.2d 298, 308 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986).

Plaintiffs, as to these defendants, have not offered an iota of evidence from which a jury could reasonably find that plaintiffs sustained their burden of proving actual malice by clear and convincing evidence.

■ Thus, with respect to the defendant Modern Salon, plaintiffs argue that the publisher's agent made but a cursory review of the advertisement prior to its printing and made no attempt to check or verify the statements. But the factual statements as to the relationship of the parties and the false statements as to defendants Redding and Nexxus by persons in the hairstyle industry were well known throughout the trade. The controversy was publicly aired. Plaintiffs' argument amounts to no more than a claim of negligence, which is insufficient to satisfy the required reckless disregard of truth standard.[22]

Similarly, lacking in evidential support is plaintiffs' claim against the other publisher defendant, American Hairdresser, which required Conair to change the advertisement by the omission of matters previously referred to. Here plaintiffs argue that this circumstance made the publisher "aware of the desire of Redding and Nexxus to attack the plaintiffs and thus run the ad in its original form," and further, that the defendant allowed the revised advertisement to be delivered directly to the printer without checking to see if it conformed to the desired changes. This claim has even less merit than that asserted against Modern Salon. The revised advertisement contains no words or language of a pejorative nature which, by the widest stretch of imagination, could be considered libellous. But even if that unwarranted assumption was made, plaintiffs have not offered substantive evidence upon which a finding of reckless disregard of truth could be made by a reasonable factfinder. Accordingly, these defendants are entitled to prevail on their respective motions for summary judgment.

The motion made by defendants Jheri Redding and Nexxus implicate and require consideration of other matters in view of the defenses under New York State substantive law in addition to their constitutional defense which we reserve for final consideration. Initially, the plaintiffs must establish that in fact the statements were false, were made of and concerning them and were defamatory.[23] Further, New York law requires that the advertisements be read as a whole and the words and phrases construed together in context; that its language be given a fair reading; that the Court not place a particular interpretation on the published words; and that the Court view the publication against the background and circumstances of its issuance.[24]

Plaintiffs have failed to carry their initial burden that the factual statements were false. The factual statements in each advertisement that (1) Jheri Redding has not been associated with Jheri Redding Products Company for almost twenty-five years; (2) Jheri Redding Products Company is a registered trademark with the United States Government, and he, Jheri Redding, can't get the Conair company to stop using it; (3) Jheri Redding Laboratories has nothing to do with him; (4) Conair owns Jheri Redding Products Company; and (5) Jheri Redding's family owns Nexxus and Jheri Redding formulates the products of Nexxus and only Nexxus, are undisputed true facts. What remains then and upon which plaintiffs base their claim that the statements were false and uttered

**22.** *Garrison v. Louisiana,* 379 U.S. 64, 79, 85 S.Ct. 209, 218, 13 L.Ed.2d 125 (1964) (test is not ordinary care but reckless disregard for the truth); *New York Times Co. v. Sullivan,* 376 U.S. 254, 288, 84 S.Ct. 710, 730, 11 L.Ed.2d 686 (1964) (negligence in failing to discover misstatements is constitutionally insufficient to show recklessness required for a finding of actual malice).

**23.** *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 380, 397 N.Y.S.2d 943, 950, 366 N.E.2d 1299, 1305, *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977).

**24.** *James v. Gannett Co.,* 40 N.Y.2d 415, 419–20, 386 N.Y.S.2d 871, 874–75, 353 N.E.2d 834, 837–39, (1976); *Tracy v. Newsday, Inc.,* 5 N.Y.2d 134, 182 N.Y.S.2d 1, 155 N.E.2d 853 (1959).

of plaintiffs, is: "Are you tired of unscrupulous *sales people* lying to you?; the next time some lying *sales person* tells you something about Mr. Jheri Redding, show him this ad—and throw him out." (emphasis supplied). These statements of undisputed fact clearly refer to sales persons who, plaintiffs do not deny, were making false statements about Redding and Nexxus. They are not of and concerning plaintiffs.[25] However, plaintiffs contend that since the Modern Salon advertisement in response to the rhetorical inquiry "what can be done" about the foregoing statements, responds "Call Lee Rizzuto ... and tell him to stop trying to ... 'RIP YOU OFF,'" the references unmistakably refer to him. While the Court is of the view that this selective process disregards the entirety of the advertisement and places a particular interpretation on the selected words, it cannot be said that a reasonable factfinder could not conclude that the Modern Salon advertisement was of and concerning Rizzuto or Conair. However, the Court need not resolve this disputed issue nor does it preclude granting defendants' motion for summary judgment.

■ So, too, plaintiffs have failed to establish that the articles are libellous. The Modern Salon advertisement which refers to "unscrupulous sales people lying"; "lying salesperson," "rip you off;" and "don't be conned," considered in context with the undisputed factual material already referred to does not warrant a finding that thereby the average reader, particularly those to whom it was addressed in the industry, understood that the references,

whether to Rizzuto or Conair or their third-party distributors, were accusing them of criminal conduct. However, the advertisement appearing in the American Hairdresser contains none of these references. In the words of the Supreme Court, "even the most careless reader must have perceived that the word[s were] no more than rhetorical hyperbole, a vigorous epithet used by those who considered" themselves unfairly treated and sought to bring what they alleged were the true facts to the readers.[26]

■ While the foregoing findings are sufficient to defeat plaintiffs' claims, the defendants press that the matters relied upon by plaintiffs to sustain the element of defamation are expressions of opinion. If they are, whether false or not, no matter how pernicious, unreasonable or vituperative the opinions expressed may be they are entitled to constitutional protection.[27] Whether a particular statement constitutes fact or opinion is a question of law.[28] I am of the view that the matters relied upon by the plaintiffs, to wit, the use of such terms as "unscrupulous sales people," "lying salesperson," "conned" and "rip off" are expressions of opinion of those who made the false statements as to defendant Jheri Redding. Thus the Supreme Court has said "'to use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies—like "unfair" or "fascist"—is not to falsify facts.'"[29] Here the parties were engaged in economic warfare and the terms used were an evaluation of the conduct of those who falsified facts as to the

**25.** *El Meson Espanol v. NYM Corp.*, 521 F.2d 737, 739–40 (2d Cir.1975); *Cole Fisher Rogow, Inc. v. Carl Ally, Inc.*, 29 A.D.2d 423, 288 N.Y.S.2d 556, 561–62 (1st Dep't 1968), *aff'd*, 25 N.Y.2d 943, 305 N.Y.S.2d 154, 252 N.E.2d 633 (1969).

**26.** *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 14, 90 S.Ct. 1537, 1541, 26 L.Ed.2d 6 (1970).

**27.** *See Trump v. Chicago Tribune Co.*, 616 F.Supp. 1434, 1435 (S.D.N.Y.1985); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974);

*Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977).

**28.** *See Davis v. Ross*, 754 F.2d 80, 85 (2d Cir. 1985); *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 381, 397 N.Y.S.2d 943, 950, 366 N.E.2d 1299, 1305, *cert. denied*, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977).

**29.** *National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974) (quoting *Cafeteria Employees Local 302 v. Angelos*, 320 U.S. 293, 295, 64 S.Ct. 126, 127, 88 L.Ed. 58 (1943)).

defendants. If, as the New York State Court of Appeals noted, to refer to a Judge as unfit and incompetent, even in the form of pejorative rhetoric is an expression of opinion, it is difficult to hold otherwise with respect to "lying," "conned," "unscrupulous sales people" and "rip you off" taken in context with other statements in the advertisement.[30]

In this case, an important rationale underlying the Supreme Court's decision in *New York Times Company v. Sullivan* that public figures have "significant access to the means of counterargument to be able 'to expose through discussion the falsehood and fallacies' of the defamatory statements,"[31] was realized. After the advertisements appeared in Modern Salon and American Hairdresser, the plaintiffs immediately resorted to self-help, "[t]he first remedy of any victim of defamation."[32] Plaintiffs placed an advertisement in both journals the next month which read: "YOU BE THE JUDGE! Find out FREE Why Another Company is Putting EXTRA in THEIR Advertising."

■ Finally, even assuming, contrary to the foregoing findings, the plaintiffs have established falsity, that the articles were of and concerning them, and indeed were libellous, they have failed to sustain their burden of proof on the ultimate element of actual malice. The record is singularly devoid of any evidence upon which a reasonable factfinder could determine that Redding and Nexxus acted with malice. They indeed were outraged by the continuing spread of false representations which gained increased force by plaintiffs' imitative styling which plaintiffs justified as a common custom of the trade. Under such circumstances for defendants to appeal to the court of public opinion and ask that those in the trade exercise a discriminating judgment in making their purchases as between plaintiffs' and defendants' products does not establish actual malice. To the contrary, their stated purpose in airing the controversy suggests the absence of malice.

Other than to advance ad hominem arguments that because of hostility engendered by their competitive positions the defendants necessarily were motivated by actual malice, plaintiffs have not advanced a shred of substantive evidence, direct or circumstantial, upon which a reasonable factfinder could find the defendants acted with the requisite actual malice or its equivalent. The fact that the plaintiffs and these defendants were engaged in what plaintiffs term "head to head" competition and in unresolved controversy for many years as to the right to the use of the name Jheri Redding; that defendants did not resort to the judicial process and instead appealed to the trade public by advertisement does not equate to proof of the required degree of malice. So, too, plaintiffs argue that the defendants had no reason to believe they were participants in the circulation of false statements about the defendants and thus defendants were motivated by "ill will" and their "zeal in attacking plaintiffs was considerable."[33] However, "ill will," "hostility" and "zeal," even less, furnish no basis to establish the required element of actual malice or reckless disregard of the truth.[34] Accordingly, the motion of the defendants Jheri Redding and Nexxus also is granted.

**30.** *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 380–81, 397 N.E.2d 943, 950–51, 366 N.E.2d 1299, *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977).

**31.** *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094 (1967).

**32.** *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 344, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974).

**33.** Plaintiffs' Brief, at 20–21.

**34.** *See National Ass'n of Letter Carriers v. Austin,* 418 U.S. 264, 281, 94 S.Ct. 2770, 2779, 41 L.Ed.2d 745 (1974); *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 52 n. 18, 91 S.Ct. 1811, 1824 n. 18, 29 L.Ed.2d 296 (1971); *Greenblatt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 10–11, 90 S.Ct. 1537, 1539–1540, 26 L.Ed.2d 6 (1970); *Rosenblatt v. Baer,* 383 U.S. 75, 84, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966); *Garrison v. Louisiana,* 379 U.S. 64, 73–74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964).

Judgment may be entered accordingly. So ordered.