OPINION OF THE COURT
Carol H. Arber, J.
Defendants VV Publishing Corporation, Shaun Assael and J. A. Lobbia move, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the libel complaint filed by plaintiff Justice Edward M. Rappaport, or, in the alternative, for summary judgment pursuant to CPLR 3211 (c). Plaintiff Rappaport opposes the motions and cross-moves for summary judgment.
This is a libel action commenced by the plaintiff, who is a *3 Justice of the New York State Supreme Court for Kings County. This lawsuit arises out of an article published in The Village Voice, on September 15, 1992, entitled "New York’s 10 Worst Judges”, and a follow-up article a week later.
Plaintiff has been a Justice of the Supreme Court of the State of New York, County of Kings, since January 1990. Prior to assuming judicial office, plaintiff was a prominent criminal defense attorney with a specialty in representing law enforcement officers charged with crimes. Plaintiff concedes in his complaint that he was retained by the Patrolmen’s Benevolent Association (PBA) to represent police officers charged with crimes until December 6, 1976. Thereafter, plaintiff continued to represent law enforcement officers in criminal matters, many of which were referred to him by the PBA, until he went on the Bench.
The defendants in the case are: (1) defendant W Publishing Corporation (VVPC) which publishes The Voice; and (2) defendants Shaun Assael (Assael) and J. A. Lobbia (Lobbia) who are the authors of the September 15, 1992 article at issue (the September 15 Article). Assael is also the author of the September 22, 1992 article, hereafter referred to as the September 22 Article.
The September 15 Article refers to plaintiff’s past association with the PBA and discusses his subsequent successful representation of a police officer acquitted in the fatal shooting of an unarmed African-American teenager through a defense of insanity. The article then examines at length the Judge’s handling of five felony cases assigned to him against law enforcement officers. Two defendants negotiated pleas: one, accused of assault, was sentenced to a day in jail and probation; the other, who pleaded guilty to leaving the scene of an accident, received a sentence of community service. The article then focuses on the two nonjury trials. (The fifth, a jury trial, ended in acquittal.) Officer Noel Barnett, accused of murder in the shooting of a correction officer, was found guilty by plaintiff of second degree manslaughter but was sentenced to community service. Officer Ernest Van Glahn, accused of smashing a suspect’s jaw with a police radio, was acquitted by plaintiff based on a "credibility issue.”
The article indicates that a disproportionate number of police felony cases have been assigned to plaintiff and questions whether his "cop caseload casts doubt on the random assignment system, even though statistical conclusions are *4 difficult to infer.” The article also quotes the Administrative Judge of the New York State Supreme Court, Kings County, Justice Ronald J. Aiello, stating that plaintiff received such cases by "the luck of the draw.”
The second article, published on September 22, 1992, entitled "Judge Gets Cop Case — Again,” was a follow-up report on the recent assignment to plaintiff of the case of Michael Dowd, who is at the center of a major police corruption scandal and is accused of cocaine possession. The article provides statistics regarding the number of felony cases involving police officers that are assigned to plaintiff, noting that plaintiff is one of seven Judges specially designated to hear such cases. The article again quotes the Administrative Judge as saying "no one agrees with” the author that there is conflict in the assignment of such cases to plaintiff. The District Attorney is quoted as affirming his confidence that plaintiff will handle the Dowd case fairly. The article concludes by questioning the wisdom of assigning criminal cases against law enforcement officers to plaintiff in view of his previous legal career defending such cases.
The plaintiff commenced this action asserting that the article contained "false implications]”, "misimpression” and "misleading” omissions. First, plaintiff alleges that the September 15 Article "falsely impl[ied] that Rappaport has acted improperly and with misconduct in the assignment of cases involving police wrongdoing to the part over which he presides,” citing the following language: "To be precise as of August [1992], five police cases have been assigned to Edward Rappaport’s Courtroom — more than any, at least three times as many as most. These numbers smell particularly fishy in a system that purports to assign cases randomly.”
For his second and third causes of action, plaintiff alleges that defendants defamed him by "publishing] the false impression that [plaintiff] was assigned the Barnett case because of his relationship with Justice Ronald Aiello,” citing the article’s language that "When Aiello was promoted to Administrative Judge, Barnett’s case fell to Rappaport.” For his fourth and fifth causes of action, plaintiff alleges that the article implies that he (Rappaport) imposed a lenient sentence on an off-duty officer who struck a man in the back, simply because he was a police officer.
For his sixth and seventh causes of action, plaintiff alleges that various statements in the article "imply” that the plaintiff rendered decisions and sentences favorable to the police *5 because he had represented the PBA, and "imply” that he was assigned more police cases than his colleagues because of this relationship with the PBA.
For his eighth cause of action, plaintiff alleges that the following statement in the September 22 Article defamed him: "Brooklyn State Supreme Court Justice Edward Rappaport— formerly an attorney for the Patrolmen’s Benevolent Association, has been assigned to hear the cocaine possession trial of Mike Dowd, the accused rogue cop at the heart of the City’s police corruption scandal. Last week, the Voice reported that the cop lawyer turned judge hears more police cases than any other judge in Brooklyn.”
DISCUSSION
Under New York law, a communication is unlikely to be found actionable if its immediate context and its broader social context and "surrounding circumstances are such as to ' "signal * * * readers or listeners that what is being read or heard is likely to be opinion, not fact” ’.” (Gross v New York Times Co., 82 NY2d 146, 153 [citations omitted].)
In order to maintain a cause of action for libel the language complained of must be reasonably susceptible of a defamatory meaning as to the plaintiff. (See, e.g., James v Gannett Co., 40 NY2d 415 [1976].) Whether particular words are reasonably capable of being read as defamatory is a threshold question of law for the court to determine. (See, e.g., Aronson v Wiersma, 65 NY2d 592, 593-594 [1985]; James v Gannett Co., 40 NY2d, at 419; Tracy v Newsday, Inc., 5 NY2d 134 [1959]; Julian v American Bus. Consultants, 2 NY2d 1 [1956].)
Plaintiff in this case asks the court to find libel not based on the factual statements expressly contained in the article, but rather based on the impressions and implications of the concededly accurate facts. The Fourth Circuit has recently described the significant obstacles in the way of such a claim: "A defamatory implication must be present in the plain and natural meaning of the words used * * * Moreover, because the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true. The language must not only be reasonably read to import the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference.” (Chopin v Knight-Ridder, Inc., 993 F2d 1087, 1092-1093 [4th Cir 1993].)
*6 In evaluating plaintiff’s assertions, this court is constrained to interpret the challenged language from the viewpoint of the average reader, without straining to find a defamatory meaning beyond the natural and ordinary meaning of the language at issue. (See, e.g., Aronson v Wiersma, 65 NY2d, supra, at 594; James v Gannett Co., 40 NY2d, supra, at 419-420; Drug Research Corp. v Curtis Publ. Co., 7 NY2d 435, 440.) A " 'strained, unreasonable and unjustified’ ” interpretation cannot form the basis for an action for libel. (Tracy v Newsday, Inc., 5 NY2d 134, 137 [1959], supra.)
Plaintiff alleges that the articles defamed him by implying that he was assigned certain cases "because of his relationship with Justice Aiello”, the Administrative Judge of the Supreme Court; that he "acted improperly and with misconduct in the assignment of cases involving police wrongdoing to the part over which he presides”; and that he "was assigned more police cases than most of his colleagues because of his relationship with the PBA.”
Nothing in the articles accuses plaintiff of misconduct or impropriety in the assignment of cases; indeed they do not even suggest that plaintiff had anything to do with the assignment of cases.[1]
Not one of the statements implies that plaintiff did anything to steer certain cases his way. While the statements raise questions as to whether the operation of the assignment system is random, it does not say that plaintiff was in any way responsible for case assignments. Nor is there a suggestion that plaintiff controls, let alone influences certain case assignments. Rather, the article states that the cases "fell to”, "have been assigned to” or "end up going to” plaintiff. The *7 statements that cases "were assigned to” plaintiff cannot possibly be misconstrued to mean that he arranged to have them assigned to him. The statements attribute no action or violation to the plaintiff at all — according to the article, he was the passive recipient of the case assignments.
In this case, plaintiff claims that the omission of certain alleged facts from the articles contributed to their alleged defamatory implication. The omissions of which plaintiff complains do not, however, meet the prerequisites for an actionable omission under the Federal or State Constitutions since they fail to establish that "material assertions in the article [are] untrue”.
An examination of each of the assertions is useful. Both articles refer to the fact that "before donning his robes in 1990, Rappaport was a lawyer” for the PBA. Plaintiff concedes that this is true.
The September 15 Article stated: "When Aiello was promoted to Administrative Judge, Barnett’s case fell to Rappaport.” Plaintiff asserts that the failure to mention that plaintiff was assigned to "the entire calendar of the part in which Justice Aiello presided” constitutes slander.
Plaintiff also faults the September 15 Article for failing to mention the existence of a "special assignment part” consisting of six Justices that was created "on or about” October 15, 1991, "to preside over criminal proceedings relating to criminal action involving indicted police officers”.
Since these allegations assert a claim of slander by omission, the trier of fact must evaluate whether they were material. In Janklow v Newsweek (759 F2d 644 [8th Cir 1985] [Janklow I]) defendant published a factual account of a 14-year-old rape allegation against the plaintiff, who had since become the Governor of South Dakota. The article omitted such facts as that plaintiff (the alleged rapist) had passed a lie detector test while the victim had been declared "untestable”, that there was no medical evidence of rape and that Federal authorities called the rape allegations " 'unfounded’ ”. (759 F2d, at 648 [Janklow I]. Although the inclusion of those facts obviously would have cast doubt on the validity of the charges, the court held that the "omission of [the] facts that [plaintiff] believes should have been published * * * did not make what was published untrue.” (Supra, at 648.) The Eighth Circuit, sitting en banc in Janklow v Newsweek (788 F2d 1300 [1986] [Janklow II]), suggested that editorial judgment as to the facts *8 to be included in a story must best be left to the newspaper: "Courts must be slow to intrude * * * not only with respect to choices of words, but also with respect to inclusions in or omissions from news stories. Accounts of past events are always selective, and under the First Amendment the decision of what to select must always be left to writers and editors. It is not the business of government.” (Janklow II, 788 F2d, at 1306.) In Rinaldi v Holt, Rinehart & Winston (42 NY2d 369 [1977]), which originated with a "Ten Worst Judges” article, the Court found that the assertions were "written from a subjective, rather obvious, point of view and did not purport to be anything else.” (42 NY2d, at 383; see also, Immuno AG. v Moor-Jankowski, 77 NY2d 235, 255 [1991] [statements protected because they "voice(d) no more than a highly partisan point of view”].)
Like the book in Rinaldi (supra), The Voice articles at issue here discussed systemic problems and advocated judicial reforms, noting the "daunting barriers” all Judges face with "tottering bureaucracies” and "enormous pressures” of the City’s justice system. The article also reported the "reforms and corrective actions” that the first "10 Worst Judges” article helped to generate and sharply criticized the political selection of Judges.
Based on New York Times Co. v Sullivan (376 US 254 [1964]), this case must be considered "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials” (at 270). In Milkovich v Lorain Journal Co. (497 US 1, 20 [1990]), the Supreme Court reaffirmed the longstanding principle that a "statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection.”
Under both the New York and United States Constitutions, only publications that can be reasonably interpreted as stating or implying facts about the plaintiff which are objectively provable as true or false are actionable. (Gross v New York Times Co., 82 NY2d 146 [1993], supra.)
The New York State Constitution is "decidedly more protective” of statements of opinion than its Federal equivalent (Gross v New York Times Co., 82 NY2d, supra, at 152). Re *9 cently, the New York Court of Appeals restated the inquiry which a trial court must make upon a motion to dismiss in a libel action: "In our State the inquiry, which must be made by the court * * * entails an examination of the challenged statements with a view toward (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to ' " 'signal * * * readers or listeners that what is being read or heard is likely to be opinion, not fact’.” ’ ” (Supra, at 153.)
Accordingly, when analyzing challenged statements the court must consider the statements within the context of the whole communication, its one and apparent purpose. (Immuno AG. v Moor-Jankowski, 145 AD2d 114, 124 [1st Dept], affd 74 NY2d 548, 553 [1989] [Immuno I], vacated and remanded 497 US 1021 [1990], adhered to on remand 77 NY2d 235, 254-255, cert denied 500 US 954 [1991] [Immuno II])
Courts have uniformly found that the question of bias or motivation is quintessentially subjective and therefore may not form the basis for an action for defamation. The Court of Appeals in Rinaldi v Holt, Rinehart & Winston (42 NY2d 369 [1977], supra) held that opinions relating to "fitness for judicial office” or "performance while in judicial office” are not actionable: "Plaintiff may not recover from defendants for simply expressing their opinion of his judicial performance, no matter how unreasonable, extreme or erroneous these opinions might be.” (Supra, at 380-381.)
Similarly, in Immuno AG. v Moor-Jankowski (supra), statements concerning motivation were held to be protected opinion incapable of giving rise to a defamation claim. The Court of Appeals explained: "Speculations as to the motivations and potential future consequences of proposed conduct generally are not readily verifiable, and are therefore intrinsically unsuited as a foundation for libel.” (Immuno I, 74 NY2d, at 560.)
Because statements concerning state of mind, such as hypotheses as to motivation, are not readily verifiable as true or false, courts of this State have consistently found them to be protected (Bruno v New York News, 89 AD2d 260 [3d Dept 1982]).
The First Department, in Hentel v Alfred A. Knopf, Inc. (8 Media L Rptr 1908, 1912 [1982], affd 92 AD2d 756 [1st Dept *10 1983]), dismissed an action for defamation based on statements that the plaintiff, then a District Attorney, had rushed a prosecution in order to enhance his electoral chances. The court held that the statements "constitute a protected exercise of [the author’s] First Amendment right to express his opinions” (8 Media L Rptr, at 1912; see also, Pace v Rebore, 107 AD2d 30, 31 [2d Dept 1985] [statement that plaintiffs used "political clout” held privileged]; Di Bernardo v Tonawanda Publ. Corp., 117 AD2d 1009 [4th Dept 1986] [express or implied allegation of use of political influence or manipulation to obtain job not actionable]).
The decisions of New York courts dismissing cases involving bias of Judges and elected officials are consistent with the response of courts nationwide.[2]
Particularly instructive is a recent decision dismissing the libel claims of a Justice of the Pennsylvania Supreme Court *11 alleging that articles in the Philadelphia Inquirer had implied that his votes in two cases were influenced by friendship or campaign contributions. In overturning the jury verdict in the plaintiffs favor on those allegations, the court held as follows: "In our view, the innuendo that Justice McDermott was 'influenced’ or 'motivated’ in his decision by friendship or campaign gifts is not susceptible of being proved true or false. There simply can be no 'core of objective evidence’ that the workings of his mind were altered or affected by outside influences * * * Defendants’ publication of this implied accusation, therefore, is entitled to full constitutional protection under Milkovich, and is not actionable” (footnote omitted). (McDermott v Biddle, 1993 Phila Cty Rptr Lexis 130, 21-22 [Ct of Common Pleas, Phila County, Feb. 10, 1993, No. 262].)
Identical concerns prompted the Eighth Circuit, sitting en banc in Janklow v Newsweek (788 F2d, supra, at 1304) to dismiss the libel complaint by Governor Janklow relating to statements made about his prosecution of Dennis Banks, a Native American activist who had previously brought charges in tribal court against the Governor for rape of a 15-year-old Native American. The article in question recited the chronology of facts, including the fact that the Governor, while Attorney General, began prosecuting Banks shortly after the tribal court’s unfavorable finding against Janklow. The Eighth Circuit concluded that "the singling out of impermissible motive is a subtle and slippery enterprise, particularly when the activities of public officials are involved” (at 1304). The court, in finding that the offensive language was not actionable, held:
"It is vital to our form of government that press and citizens alike be free to discuss and, if they see fit, impugn the motives of public officials * * *
"Because the disputed statement in this case is imprecise, unverifiable, presented in a forum where spirited writing is expected, and involves criticism of the motives and intentions of a public official, we affirm the holding of the District Court that it is opinion, protected by the First Amendment.” (Janklow II, 788 F2d, at 1305.)
In this case, each of plaintiffs claims relates to either implications or omissions. It is interesting that plaintiff does not argue that any of the factual statements contained in the articles is false. Moreover, the omissions complained of as to the assignment of cases do not relate to actions taken by *12 plaintiff but are addressed to the assignment system. Based on the above discussion of the recent court decisions regarding expressions of opinion, it is clear that the courts have determined that discussion and criticism of public officials and Judges must be encouraged. Therefore, whether articles are critical or not is secondary to the goal of encouraging the freedom to raise such issues in our form of government. The articles complained of are prime examples of expressions of opinions of the writer which have successfully provoked, at the very least, the above discussion. That purpose is protected by the First Amendment and the defendants’ motion to dismiss the complaint must therefore be granted.

. The September 15 Article contains the following statements regarding case assignments: "Five police cases have been assigned to plaintiff”; "These numbers smell particularly fishy in a system that purports to assign cases randomly”; ”more than one in five felony indictments brought against cops by District Attorney Charles Hynes somehow end up going to the ex-PBA lawyer”; "When Aiello was promoted to Administrative Judge, Barnett’s case fell to Rappaport”; "Rappaport’s cop caseload casts doubt on the random assignment system, even though statistical conclusions are difficult to infer.” (Emphasis added.)
The September 22 Article contains the following: "Rappaport * * * has been assigned to hear the cocaine possession trial of Mike Dowd, the accused rogue cop”; "As one of th[e] seven [Judges preselected to hear cases brought by the Law Enforcement Investigation Bureau], Rappaport was assigned the case at Wednesday’s arraignment”; "one in every five felony indictments against police has wound up before Rappaport.” (Emphasis added.)

. E.g., Price v Viking Penguin, 881 F2d 1426, 1438 (8th Cir 1989), cert denied 493 US 1036 (1990) (statement that embodies "a qualitative judgment [of a law enforcement] agency’s motivation, effort and effectiveness * * * is unverifiable” and therefore protected as opinion); Janklow v Newsweek, Inc., 788 F2d 1300 (8th Cir) (en banc), cert denied 479 US 883 (1986) (Janklow II) (statement that plaintiff, Governor of South Dakota, had, while Attorney General, been prosecuting Dennis Banks because Banks had brought assault charges against plaintiff, held not actionable); King v Globe Newspaper Co., 400 Mass 705, 716, 512 NE2d 241, 248 (1987), cert denied 485 US 940 (1988) (assertion that plaintiff Governor’s position on racetrack legislation was motivated by personal loyalty held not actionable; "the First Amendment protects as opinion discussion about the motives of public officials”); Disen v Hessburg, 455 NW2d 446 (Minn 1990), cert denied 498 US 1119 (1991) (statements questioning County Attorney’s commitment to prosecuting domestic violence cases held not actionable opinion despite allegedly false factual implications); Okun v Superior Ct., 29 Cal 3d 442, 451, 175 Cal Rptr 157, 162, 629 P2d 1369, 1374, cert denied sub nom. Maple Props. v Superior Ct., 454 US 1099 (1981) ("A statement regarding (1) a public official’s business, social, or political affiliations, and (2) how those affiliations seem reflected in decision-making” is not actionable; "[a] contrary ruling would inhibit a significant segment of the discourse vital in a democracy”); Gregory v McDonnell Douglas Corp., 17 Cal 3d 596, 604, 131 Cal Rptr 641, 646, 552 P2d 425, 430 (1976) ("[publications otherwise protected under the First Amendment do not lose their protection because they contain statements which attribute improper motives” to a public official or union official); Grillo v Smith, 144 Cal App 3d 868, 875, 193 Cal Rptr 414, 419 (1983) (statement that "judge * * * 'changed his mind under pressure from his peers’ * * * merely express the [newspaper’s] opinion of what his actions and motivations were. As such they constitute nothing 'more than a constitutionally protected expression of severe disapproval of noncriminal conduct’ ”); Marchiondo v New Mexico State Tribune Co., 98 NM 282, 648 P2d 321 (1981) (statement that gubernatorial candidate was likely or inclined to appoint cronies held actionable opinion).