■ EDWARD ARRIGONI et al., Respondents, v GUY VELELLA, Appellant, et al., Defendants.

In this libel action arising out of the distribution of a political flyer by defendant Velella during a 1982 New York State Assembly election campaign, plaintiffs have been granted summary judgment. Two Assembly districts were combined as a result of reapportionment. One incumbent, John Dearie, ran against defendant Velella, who was also an incumbent. During the campaign, a political flyer, the subject of this lawsuit, was prepared and distributed by Velella and a political committee that supported him. Plaintiff Edward Arrigoni is president and principal officer of the two corporate plaintiffs. He and Dearie have been lifelong friends, and he has supported Dearie in all of his political campaigns. So far as appears, he did not contribute to Dearie's 1982 campaign against Velella. Plaintiff New York Bus Tours, Inc. (New York Bus) provides bus service between The Bronx and Manhattan. Plaintiff Parochial Bus System, Inc. (Parochial) provides school bus service in The Bronx.

Several weeks prior to the election, the flyer began to be distributed at various bus stops of plaintiff New York Bus. Subsequently, an ad prepared by Velella was printed in a local newspaper purporting to correct an error in Velella's campaign literature.

In essence the flyer, captioned "It pays to have friends in Albany", asserted that the individual plaintiff and Dearie were special friends, that this plaintiff contributed to Dearie's campaign, and that this plaintiff's brother had obtained a "low-interest State loan for $452,000 * * * *almost the same amount the Bus Bosses contributed to Dearie's campaign.*" The flyer further implied that past and prospective bus fare increases paid for this contribution.

It is undisputed that the individual plaintiff does not have a brother. The subsequent advertisement, placed by "Friends of Guy Velella", stated that "there MAY have been an error" in identifying the recipient of the loan as this plaintiff's brother, but pursued the inquiry as to who received the loan and as to its relationship to the fare increase and the campaign contributions. It is alleged the campaign flyer continued to be distributed, without correction.

The first cause of action alleges the entire flyer was false, that defendants, at the time of its publication, knew or should have known it was false, and that the flyer was intended to subject plaintiffs to ridicule and disgrace and to convey the impression plaintiffs had engaged in corrupt and scandalous conduct.

The third through seventh causes of action respectively set forth specific statements in the flyer alleging that they are false, that defendants knew or should have known of their falsity, and that they were intended to and did, in fact, injure plaintiffs' reputations and business relations.

The eighth cause of action pertains to the advertisement in a local newspaper and makes similar allegations. The individual plaintiff sought judgment on the first through eighth causes of action in the total amount of $60 million. The corporate plaintiffs sought judgment on the same causes of action in the total amount of $53 million.

The answer consisted of denials and 16 affirmative defenses including truth, privilege and fair comment. Defendants also asserted a counterclaim for $60,000, alleging the action was brought to aggravate, humiliate and intimidate them.

Special Term granted plaintiffs summary judgment against Velella on the first and third through eighth causes of action, and struck all of defendants' affirmative defenses. The court ruled that as a matter of law, the flyer charged plaintiffs with a crime and political corruption, making it libelous per se. The court concluded "there is no question that patent falsity exists and there is an absence of triable issues". It was further ruled that there "exists no rational basis upon which a reasonable jury could find in favor of the defendant", and that plaintiffs "have established malice through the reckless disregard of the facts by the defendant and by defendant's conduct." It was concluded that plaintiffs are not public figures and, even if they were, defendants acted with reckless disregard of whether or not the publication was false.

Summary judgment in favor of plaintiffs was improperly granted on this record. In order to obtain summary judgment, plaintiffs must show that the flyer was defamatory and false as a matter of law. Although the language of the flyer may perhaps be susceptible of an interpretation that it charged plaintiffs with a crime and political corruption, this is not at all clear. In essence, the flyer charged that plaintiffs made political contributions to Dearie's campaigns and that Dearie's actions as a legislator were motivated by such contributions. Whether such charges in a political campaign are defamatory is open to serious question.

In the absence of some clear assertion of criminality, accusations of the use of political influence to gain some benefit from the government are not defamatory and do not constitute libel per se (*Pace v Rebore,* 107 AD2d 30, and cases there cited). Special Term's interpretation of the campaign literature as libelous per se is untenable if the language is taken in context and viewed fairly (*James v Gannett Co.,* 40 NY2d 415, 419-420). The language is reasonably susceptible of more than one meaning. "While it is true that the courts ' "will not strain" to interpret [allegedly defamatory works] "in their mildest and most inoffensive sense to hold them nonlibelous" ' (*November v Time Inc.,* 13 NY2d 175, 178, quoting *Mencher v Chesley,* 297 NY 94, 99), it is also true that courts will not strain to find a defamatory interpretation where none exists (see *Tracy v Newsday, Inc.,* 5 NY2d 134)." (*Cohn v National Broadcasting Co.,* 50 NY2d 885, 887.)

It is well settled that where the language is susceptible of more than one meaning, a determination that a defamatory construction "is the only meaning to be placed upon the words used * * * would encroach upon the province of the jury. It is enough that reasonable basis exists for such an interpretation. Once that is decided, it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the ordinary and average reader." (*Mencher v Chesley,* 297 NY 94, 100, *supra; see also, James v Gannett Co.,* 40 NY2d, at p 419.) On this basis alone, summary judgment should have been denied.

It is undisputed that, as the flyer asserts, Arrigoni and Dearie are longtime friends. It also appears that Arrigoni, his family, bus companies and others solicited by Arrigoni contributed large sums of money to Dearie's political campaigns. So far as appears, there was nothing illegal about such contributions, and the fact that they were made stands undisputed.

So much of the flyer as suggests that Dearie proposed and helped to pass legislation giving Arrigoni an exclusive 10-year school bus franchise, which was vetoed by Governor Carey, does not appear to be defamatory. At best for plaintiffs, a jury question is raised. It is noted that defendant Velella apparently sponsored and voted for the same or similar legislation.

The basis for the determination on this record that Arrigoni is not a public figure does not appear. It is undisputed that Arrigoni has been actively involved in New York City politics. He and his family, corporations, and others whom he solicited, made substantial political contributions to candidates of their choice. Undoubtedly these contributions were affected by self-interest and the interest of the bus companies. Their activities

were the subject of substantial press attention. Their bus business involves the daily needs and welfare of thousands of New Yorkers. New York Bus is one of the largest private bus companies in the city. Arrigoni has communicated with the Legislature, the Board of Estimate, and the press with respect to bus legislation. He and his bus companies operate a transit system of more than 300 buses, with an apparent annual revenue of $22 million. They would appear to be public figures (*Gertz v Robert Welch, Inc.,* 418 US 322, 351-352; *James v Gannett Co., supra; cf. Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 198-199).

In *Maule v NYM Corp.* (54 NY2d 880, 881-882, n), holding the plaintiff in that case to be a public figure, the court left open the question "whether a plaintiff's status in an action for defamation should be determined by the court or by the jury or by both (see, e.g., *Rosenblatt v Baer,* 383 US 75, 88; Restatement, Torts 2d, § 619; Prosser, Torts [4th ed], § 115, p 796)". We need not decide that issue here. It is plain that the determination that plaintiffs were not public figures, as a matter of law, was not warranted on this record. If Arrigoni is a public figure, defendant was afforded a qualified privilege requiring that Arrigoni prove malice, in short, that the privilege has been abused (*Toker v Pollak,* 44 NY2d 211). This is a jury question (*Hamilton v Eno,* 81 NY 116, 122-123; *James v Gannett Co., supra; Petrus v Smith,* 91 AD2d 1190, 1191).

Plaintiffs have wholly failed to establish the existence of malice, as a matter of law. Even if Arrigoni were not a public figure, defendants' statements might be qualifiedly privileged because of plaintiffs' business affecting the daily welfare of a large segment of the public (*Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, *supra; Thompson v Maimonides Med. Center,* 86 AD2d 867; *Fairley v Peekskill Star Corp.,* 83 AD2d 294).

Malice, which turns in part on defendant's state of mind or purpose, is generally not amenable to summary judgment (*Rinaldi v Viking Penguin,* 52 NY2d 422, 437-438; *Gaeta v New York News,* 62 NY2d 340).

The determination, as a matter of law, that both defamation and malice were estabished, is without basis. *Silsdorf v Levine* (59 NY2d 8), relied upon by Special Term, is plainly distinguishable. The political flyer there stated (pp 11-12) " 'There is no longer any question about the corruptness of Arthur Silsdorf's administration of the affairs of the Village of Ocean Beach.' " Thus, in *Silsdorf,* the plaintiff himself was explicitly charged with corruption. Moreover, *Silsdorf* merely sustained the sufficiency of the complaint against defendant's motion to dismiss.

Here, the corruption is alleged against Dearie, not the plaintiffs. In addition, the sufficiency of the complaint is assumed and the answer has been stricken without affording the defendants an opportunity to have a jury pass on the manifest triable issues.

Summary judgment was improvidently granted to plaintiffs in this defamation action in which triable issues abound. Concur — Kupferman, J. P., Sandler, Fein and Kassal, JJ.