[616 NYS2d 355]

Joseph A. Suozzi, Respondent-Appellant, v Alan Parente et al., Respondents, and Donald DeRiggi et al., Appellants-Respondents, et al., Defendants.

First Department, September 8, 1994

APPEARANCES OF COUNSEL

*John E. Ryan* of counsel *(Kwiatkowski & Ryan,* attorneys), for Donald DeRiggi and others, appellants-respondents, and Alan Parente, respondent.

*Stephen W. Schlissel* of counsel *(Ross M. Abelow* and *Barbara S. Barron* with him on the brief; *Meltzer, Lippe, Goldstein, Wolf, Schlissel & Sazer, P. C.,* attorneys), for respondent-appellant.

## OPINION OF THE COURT

SULLIVAN, J. P.

In this action, plaintiff, a practicing attorney and former Justice of the Supreme Court of the State of New York and Associate Justice of the Appellate Division, Second Department, who retired from public life in 1979, seeks compensatory and punitive damages for an alleged defamation arising out of the October 27, 1981 publication in the Glen Cove Eagle, an organ of the Glen Cove Republican Campaign Committee (GCRCC), of an article entitled, "Tangled Tale of Suozzi and the Northstage."

The thrust of the article in question, published one week before Election Day, was that plaintiff's brother, Vincent Suozzi, the former Mayor of Glen Cove from 1973 to 1979, and Democratic Party candidate for that office in 1981, had, during his tenure, arbitrarily blocked the issuance of a license for live entertainment to the previous owners of the Northstage Theater in Glen Cove and, to that end, caused violations to be listed against the premises and then facilitated the issuance of the license after one of his relatives, plaintiff, had acquired an

interest in the building. According to the article, the violations thereafter "miraculously disappeared." The article also stated that City records showed that plaintiff's brother, as Mayor, after having the improvements on a City-owned Triangle across from the Northstage Theater demolished in order to provide free parking for Northstage patrons, spurned offers to develop the property and restore it to the tax rolls.

Named as defendants, among others, are Alan Parente, the Mayor of Glen Cove in 1981 and Republican Party candidate for reelection; Donald DeRiggi, a member of GCRCC and Glen Cove Councilman and Republican Party candidate for reelection in 1981; Joseph M. Reilly, the GCRCC chairman, who supervised the 1981 campaigns of the Republican candidates; and James Griffin, now deceased, whose estate has been substituted in his stead, a staff writer of the Glen Cove Eagle and the author of the allegedly defamatory article.

The complaint, which does not specify the role played by each of the numerous defendants in the publication, asserts generally that the "defendants and each of them published" the article in question, which is alleged to be defamatory and susceptible to the imputation of the assertion of "criminal and disgraceful charges" against plaintiff and injurious to his reputation in the community and profession as an attorney, thereby exposing him to "public hatred, contempt, scorn, obloquy and shame". The complaint further alleges that defendants published the article "out of actual malice, including [their] desire thereby to injure plaintiff, defendants then having been [actuated] by spite and ill will."

In addition to denying the complaint's material allegations, defendants raised as affirmative defenses that the article was true, that it constituted protected speech under the First Amendment and section 8 of article I of the New York State Constitution in that it was published to inform the electorate on a matter of public interest and that plaintiff was a public figure and the article was not published with actual malice or any intention to injure plaintiff. In denying an earlier motion to dismiss the complaint, as repleaded, the then Special Term court (Eugene R. Wolin, J.) ruled that, even though "the thrust of the challenged publication was directed at [plaintiff's brother] and his record while in office", the article was nonetheless defamatory as to plaintiff because it would leave the average reader with the understanding that plaintiff and his brother "had committed a criminal offense or an unethical act." The court declined to rule on plaintiff's alleged status as

a public figure and rejected, as premature, the argument that plaintiff had failed to meet his burden of showing actual malice. The court also noted that if, after discovery, plaintiff could not sustain his burden of proof, summary judgment was available to defendants.

Upon the completion of discovery, defendants moved for summary judgment dismissing the complaint. The motion was granted as to eight of the defendants, including Parente, on the ground that these defendants were not, in any manner, involved in the publication of the article in question.[1] According to Parente, whose only concern, he claims, was that the article be factual, he had not seen the article until after its publication; nor was he even aware of its contents, although he knew that an article about the Triangle was being prepared for publication on the basis of an investigation conducted some years before.

It is conceded that the now-deceased Griffin wrote the article in 1981 from information derived, in large part, from an investigative report prepared by Leslie Plump[2] in 1975, when Vincent Suozzi, the Mayoral incumbent, was the Democratic Party candidate for reelection, and newspaper accounts regarding the rejection of various development proposals for the Triangle. In the summer or fall of that year, Reilly and DeRiggi had directed Plump, a local attorney, to do a research project on the Northstage Theater for possible use in connection with the election campaign. On the basis of his investigation of the Glen Cove Building Department records and review of documents supplied by DeRiggi, Plump prepared a chronological memorandum dealing with the license application and violations at the Northstage Theater. Reilly and DeRiggi directed Griffin at that time to write an article based on the Plump report for the Glen Cove Eagle. For reasons that have no relevancy here, the article was never published.

Six years later, in 1981, when Vincent Suozzi was again a candidate for Mayor of Glen Cove, Reilly and DeRiggi asked Griffin to do an article on Northstage. At that time DeRiggi delivered Plump's 1975 chronological memorandum to Griffin. According to DeRiggi, Reilly later requested that he review Griffin's newly written article to assure that it was not libel-

---

1. Plaintiff does not cross-appeal from the dismissal as to three of these defendants, Harvey Jessum, Maggie Polk and Arthur Sweid.

2. Plaintiff discontinued the action against Plump, an original party defendant.

ous. According to DeRiggi, when he reviewed a draft of the article, its subject matter was limited to the information contained in Plump's memorandum. After reading the draft, DeRiggi advised Reilly that it was not libelous. As published, however, the article contained additional information, previously published in Glen Cove newspapers, about the rejection of proposals to develop the Triangle, which, according to DeRiggi, was furnished to Griffin by a Mr. Auciello. On the other hand, Griffin, deposed before his death, testified that DeRiggi saw and approved the final draft of the article, the thrust of which, on Reilly's orders, was aimed at Vincent Suozzi, the candidate.

The article in question states that an inspection of the Northstage Theater building conducted on February 2, 1973, after a court had ordered the Glen Cove City Council to issue a license for motion pictures and live entertainment to its then owners, found building violations serious enough to bar issuance of the license. Apparently, an earlier inspection had found no such violations. On December 11, 1973, four months after plaintiff and others had purchased the property, the license was issued. According to the article, a check of city records showed no evidence that the violations had been cured; instead, it noted, "Apparently they had miraculously disappeared." In fact, the records show that the violations were removed in November 1973 as a result of repairs made by the new owners. These records were available in 1975, when the Building Department records were allegedly reviewed by Plump, as well as in 1981.

As already indicated, the article also asserted that, as Mayor, Vincent Suozzi had rejected at least five firm development proposals, thereby permitting the Northstage Theater owners to use the Triangle as a free parking lot for Northstage's patrons. While Griffin claimed that he gleaned this information from the Plump chronology, he had to concede that Plump's report never dealt with the subject of the Triangle. Confronted with this inconsistency, Griffin stated that he obtained the information verbally, probably from DeRiggi. Griffin also conceded that he did not take any action to verify the facts contained in the Plump memorandum.

Plaintiff opposed the motion and cross-moved for summary judgment, supported by a 47-page attorney's affidavit in which it was conceded that plaintiff was a public figure. The IAS Court granted the motion to the extent of dismissing the complaint as against all the defendants except the estate of

Griffin, which does not appeal, DeRiggi and Reilly and denied, in its entirety, plaintiff's cross motion. The court found that the article contained statements, which, if false, were defamatory because they "alleged that, at [Mayor Vincent Suozzi's] direction, records of building code violations were fabricated and falsified in such a way as to further plaintiff's pecuniary and proprietary interests."

The court found a triable issue of fact as to Griffin's authorship and actual malice since Griffin had defended on the ground he was not the author of the article but had "merely converted into prose" information given him by others, including the investigative research done by Plump six years before, which he had no reason to doubt. It also found that Reilly directed Griffin to write the article and instructed him as to the subject matter; DeRiggi, it found, reviewed the article and participated in the decision to publish. As to these defendants, the court found that summary judgment was precluded by issues of fact as to whether they reasonably believed in the trustworthiness of the article because, as they argued, it was "researched" by the "competent[,] well thought of" Plump and as to whether they acted with a reckless disregard for the truth.

DeRiggi and Reilly appeal from the denial of their motion for summary judgment. Plaintiff cross-appeals from the denial of summary judgment in his favor against the estate of Griffin and, except with respect to three of the other defendants, the grant of summary judgment dismissal of the complaint in favor of the remaining defendants. We modify to dismiss the complaint against the appealing defendants, Reilly and De-Riggi.

Plaintiff contends that the article was defamatory in that it falsely accused him of conspiring with his brother, at the time the Mayor of Glen Cove, to falsify Building Department records and corruptly influence Building Department officials so that the then owners of the Northstage Theater would be compelled to sell the premises to him and his partners. Plaintiff also asserts that the article falsely stated that his brother, as Mayor, arbitrarily vetoed several developmental projects on a site used by Northstage as a parking lot so that the site could be continued to be so used and thereby benefit plaintiff.

It is, of course, the court's responsibility to determine whether a publication is susceptible of the defamatory mean-

ing ascribed to it. *(Tracy v Newsday, Inc.,* 5 NY2d 134, 136; *Rejent v Liberation Publs.,* 197 AD2d 240.) While a court should not reach to place a particular construction on the language complained of *(James v Gannett Co.,* 40 NY2d 415, 420), it should similarly "not strain to interpret [words] in their mildest and most inoffensive sense to hold them nonlibelous" *(Mencher v Chesley,* 297 NY 94, 99). It is also useful to note that the Court of Appeals has consistently reaffirmed its "regard for the particular value of summary judgment, where appropriate, in libel cases." *(Immuno AG. v Moor-Jankowski,* 77 NY2d 235, 256, *cert denied* 500 US 954.)

In that regard, plaintiff's cause is not well served by conclusory assertions, such as the claim that the article recites that plaintiff and his brother, the then Mayor of Glen Cove, "falsified public records and corruptly influenced public officials". Conclusory allegations such as these will not defeat a motion for summary judgment in a libel action. *(See, e.g., Roche v Hearst Corp.,* 53 NY2d 767, 769.) Contrary to plaintiff's claim, the article does not contain any statement that he or his brother falsified any governmental records or corruptly influenced Building Department officials. Notably, although the article in question employed the expression "phantom violations", it does not state that plaintiff caused any fabricated violations to be placed against the building. Rather, the article states, based on the chronology report prepared by Plump in 1975, that the Building Department records initially showed no violations, then indicated the existence of violations and thereafter reflected the issuance of a license without any evidence that these violations had been removed. Nowhere in the article, however, is there any assertion of plaintiff's or, for that matter, his brother's involvement in the "falsification" of public records.

What the article does suggest is that political favoritism exercised by plaintiff's brother, as Mayor, and family ties were factors in the licensing process with respect to the premises in question and were no less a consideration in the disposition of plans for the development of the Triangle. Although the article is rife with the suggestion of corruption with respect to his brother, there is no assertion of criminality, or, indeed, corruption levelled against plaintiff. Thus the article, at most, suggests that plaintiff took advantage of his political connections to gain some governmental benefit. It is well settled that, "[i]n the absence of some clear assertion of criminality" such an accusation is not defamatory and does not constitute libel

per se. *(Arrigoni v Velella,* 110 AD2d 601, 603; *Pace v Rebore,* 107 AD2d 30, 32; *ATN Marts v Ireland,* 195 AD2d 959.)

In determining whether the article is susceptible of a defamatory interpretation, it is important to keep in mind the context in which it was published. Plaintiff's brother, the former Mayor and the then Democratic candidate for Mayor, was in the midst of a political campaign. The article, an obvious political tract emanating from the opposing camp, was written for a partisan publication and directed, as this record shows, against plaintiff's brother, the candidate, and not plaintiff. The very timing of the publication—one week before Election Day—suggests that it was intended for maximum political effect with a minimum opportunity for rebuttal, the enduring hallmark of a political piece. Statements on a matter of public concern made in the course of a political campaign are accorded a qualified privilege. *(ATN Marts v Ireland, supra,* 195 AD2d 959.) Thus, even if the statements were defamatory, in the absence of a showing that they were made with malice, either under the constitutional (actual malice, i.e., "knowledge that [the statement] was false or * * * reckless disregard of whether it was false or not" *[New York Times Co. v Sullivan,* 376 US 254, 280]) or common-law (spite or ill will *[see, Stillman v Ford,* 22 NY2d 48, 53; *Shapiro v Health Ins. Plan,* 7 NY2d 56, 61]) standard *(Liberman v Gelstein,* 80 NY2d 429, 438), which will defeat the privilege, they are protected. Plaintiff has demonstrated neither.

Moreover, since plaintiff has conceded that he is a public figure, the constitutional standard applies and he must show that any defamatory statements were published with actual malice, i.e., knowing falsity or reckless disregard for the truth. *(Curtis Publ. Co. v Butts,* 388 US 130; *New York Times Co. v Sullivan,* 376 US, *supra,* at 279-280; *Rinaldi v Viking Penguin,* 52 NY2d 422.) He is required to establish not only the defamatory statement but also actual malice, which are "distinct concepts". *(Mahoney v Adirondack Publ. Co.,* 71 NY2d 31, 39.) Actual malice must be established by clear and convincing evidence. *(See, Bose Corp. v Consumers Union,* 466 US 485, 511, n 30; *New York Times Co. v Sullivan, supra,* at 285-286.)

The Supreme Court has defined reckless disregard for the truth as a " ' "high degree of awareness of * * * probable falsity." ' " *(Gertz v Robert Welch, Inc.,* 418 US 323, 332.) Accordingly, actual malice cannot be established merely because reliance on a source's information is negligent *(St.*

*Amant v Thompson,* 390 US 727, 731-733); the mere failure to conduct further investigation is insufficient to establish actual malice *(supra,* at 731; *see also, Time, Inc. v Hill,* 385 US 374, 387-388). Nor can actual malice be founded on the misinterpretation of a source or the resolution of an ambiguity adversely to the plaintiff or in accordance with a particular political view. *(Time, Inc. v Pape,* 401 US 279.) The focus of inquiry is on the subjective state of mind of the defendant. *(Herbert v Lando,* 441 US 153, 170.)

In that regard, both DeRiggi and Reilly testified that they believed the article to be true, relying upon the research and investigation of Plump and others in arriving at this conclusion. While plaintiff argues that these defendants should have independently verified the work prepared by Plump and Griffin, he offers no evidence that they had reason to believe that Plump and Griffin were not dependable. In the absence of substantial reasons to question the accuracy of their work, a good-faith reliance on the activities of others cannot give rise to a finding of actual malice. *(St. Amant v Thompson,* 390 US, *supra,* at 731.)

Although the IAS Court found an issue of fact on this issue, the record is bereft of any proof, in admissible form, that would sustain plaintiff's burden of establishing, with convincing clarity, actual malice. Plaintiff, who relies solely on the affidavit of his attorney, had to show that Reilly and DeRiggi, as this Court has noted in connection with that burden, "had obvious reasons to doubt" the veracity and accuracy of Griffin and Plump, among others. *(New Testament Missionary Fellowship v Dutton & Co.,* 112 AD2d 55, 56; *Chalpin v Amordian Press,* 128 AD2d 81, 88.) He has failed to do so. The best he can offer is the argument, through counsel, that Reilly and DeRiggi should not have relied on Plump and should, instead, have conducted their own independent investigation. Counsel's interpretation of the evidence fails to "supply the evidentiary showing necessary to successfully resist the motion." *(Roche v Hearst Corp.,* 53 NY2d, *supra,* at 769.)

Since plaintiff has failed to show that the complained-of article was defamatory as to him and, in any event, as a public figure, failed to show actual malice as against these defendants, the amended complaint should have been dismissed as to appellants Reilly and DeRiggi. The award of summary judgment to the other defendants, except the estate of Griffin, was proper since, in any event, they played no active role in the publication of the article. Absent a finding of

actual fault, these defendants cannot be charged with vicarious liability based on their status as either a candidate or member of or volunteer for the GCRCC. *(Gertz v Robert Welch, Inc., supra,* 418 US 323; *Karaduman v Newsday, Inc.,* 51 NY2d 531, 547.)

Accordingly, the order of the Supreme Court, New York County (Walter M. Schackman, J.), entered May 18, 1992, which, *inter alia,* denied the motion by defendants Reilly and DeRiggi for summary judgment dismissing the amended complaint, should be modified, on the law, to grant said motion and, except as thus modified, affirmed, without costs or disbursements.

CARRO, ELLERIN, ASCH and TOM, JJ., concur.

Order, Supreme Court, New York County, entered May 18, 1992, which, *inter alia,* denied the motion by defendants Reilly and DeRiggi for summary judgment dismissing the amended complaint, modified, on the law, to grant said motion and, except as thus modified, affirmed, without costs or disbursements.