■ V. JAMES BOYLE, Respondent, v STIEFEL LABORATORIES, INC., et al., Appellants. [612 NYS2d 469] —White, J. Appeal from that part of an order of the Supreme Court (Connor, J.),

entered June 1, 1993 in Columbia County, which denied defendants' motion to dismiss plaintiff's first and second causes of action for failure to state a cause of action.

In 1985 defendant August C. Stiefel Research Institute, Inc. (hereinafter SRI), through its president, defendant Daniel W. Nicolai, hired plaintiff as director of its microbiology laboratory. There was no written employment contract but plaintiff signed an employment agreement whereby SRI could dismiss plaintiff at anytime with or without cause. Plaintiff's responsibilities included supervision of laboratory technicians, assignment of research tasks, review of the technicians' work to insure accuracy and compliance with Federal Food and Drug Administration (hereinafter FDA) regulations, together with insuring compliance with applicable SRI standard operating procedures. Defendant Stiefel Laboratories, Inc. (hereinafter Stiefel Labs) owns 100% of the stock of SRI and provides administrative services to SRI. SRI, however, owns its own land, has its own board of directors, maintains its own payroll, books and records, and provides services to other companies as well as SRI.

In January 1992, the FDA, pursuant to its usual procedures involving new drugs being tested at SRI, was conducting an audit of Erythromycin testing being conducted at SRI and defendant Patricia M. Savoie, a laboratory technician who was doing the Erythromycin testing, obtained test results which indicated the product being tested did not meet FDA specifications. Plaintiff instructed Savoie to provide him the test results on a piece of scrap paper, rather than having Savoie enter and initial the results in the laboratory notebook, which was in the possession of plaintiff. Because this was contrary to company standard operating procedure and plaintiff previously had requested test data in this manner, Savoie was concerned and, therefore, made a photocopy of her calculations before providing plaintiff with the scrap paper. Later that day plaintiff asked Savoie to sign the laboratory notebook indicating she had completed the test; however, because the figures in the notebook were not the same as those which she had provided to him earlier, she refused to sign the notebook, at which point plaintiff became visibly upset and took her off antibiotic testing.

As a result of this incident, Savoie and the other two laboratory technicians spoke to the laboratory director and personnel director and voiced their concern about plaintiff's insistence that they violate the standard operating procedures

established by the company for this type of testing. An investigation was immediately conducted by defendant William Carr, vice-president of SRI. He interviewed the parties involved and found that the laboratory notebook contained information which was contrary to Savoie's original reading and also determined that there were serious morale problems in the laboratory. Based on his investigation, Carr advised Nicolai that plaintiff be terminated because of personnel problems and plaintiff's failure to follow the standard procedures of the company. On January 31, 1992, Nicolai informed plaintiff that his employment was being terminated due to his inability to effectively manage the laboratory technicians as well as the allegations of notebook tampering.

Subsequently, Nicolai advised two executives of SRI of plaintiff's termination and the reasons why this action had been taken. One of these conversations was with senior research associate Donald Schelling in which Nicolai indicated that because the three laboratory technicians were female, he was also concerned about a possible complaint of sexual harassment. Later some of plaintiff's personal materials were taken home by Schelling to be delivered to plaintiff. Some time thereafter plaintiff came to Schelling's house to pick up the materials and a conversation ensued which, unknown to Schelling, was tape recorded by plaintiff. In this conversation Schelling made reference to the fact that Nicolai had expressed concern about sexual harassment.

Plaintiff then commenced this lawsuit against Stiefel Labs, SRI, Nicolai, Carr and Savoie, alleging causes of action for willful and malicious termination of employment, defamation and conspiracy to discharge plaintiff. Defendants moved to dismiss the complaint for failure to state a cause of action pursuant to CPLR 3211 and 3016. Supreme Court granted the motion regarding the unlawful discharge cause of action as to Stiefel Labs and SRI and denied the motion as to Nicolai, Carr and Savoie, without prejudice for plaintiff to replead a prima facie tort cause of action. The court denied defendants' motion as to the defamation cause of action and granted defendants' motion as to the conspiracy cause of action, again without prejudice for plaintiff to replead a prima facie tort.

As to the first cause of action alleging malicious interference with employment, there is no question that plaintiff's employment contract with SRI was terminable at will and plaintiff has failed to demonstrate any limitation by express agreement of the employer's unfettered right to terminate him at will *(see, Sabetey v Sterling Drug,* 69 NY2d 329;

*Murphy v American Home Prods. Corp.,* 58 NY2d 293; *Feeney v Marine Midland Banks,* 180 AD2d 477, *lv denied* 80 NY2d 753). Further, there has been no showing of impropriety on behalf of Nicolai, Carr or Savoie. Savoie was asked by plaintiff on several occasions to perform duties in contradiction of SRI's standard operating procedures, which she refused to do, and she related this violation of procedure to her superiors. Nicolai ordered an investigation by Carr and once it had been determined that plaintiff had not been following the proper procedures and that there was a serious question if the laboratory could continue to function with plaintiff in control, plaintiff was terminated. Likewise, Carr merely conducted an investigation of the complaints and made a report to Nicolai recommending plaintiff's termination. Both Nicolai and Carr were officers of the corporation and, as such, no liability can be imposed upon them because they were acting in good faith *(see, Robbins v Panitz,* 61 NY2d 967; *Murtha v Yonkers Child Care Assn.,* 45 NY2d 913). The actions of Savoie in reporting this incident to her superiors is also not actionable because her statements concerning plaintiff's conduct were subject to a qualified privilege, being made by a person with an interest in the subject to others with a corresponding interest in the furtherance of the common interests of the employer *(see, Loughry v Lincoln First Bank,* 67 NY2d 369; *Rabideau v Albany Med. Ctr. Hosp.,* 195 AD2d 923).

As to the defamation cause of action, we first find that plaintiff's complaint is deficient in that there has been no allegation of special damages because a round figure of $1 million is not a sufficient allegation of damages in this type of action *(see, Talbot v Johnson Newspaper Corp.,* 124 AD2d 284). Further, any statement made by any of the individual defendants in this lawsuit would be subject to a qualified privilege because they were all co-employees with a common interest and there is no showing that the alleged defamatory statements were published with actual malice, i.e., personal spite, ill will, culpable recklessness or negligence, or that the statements were so vituperative in their character as to justify an inference of malice *(see, Misek-Falkoff v Keller,* 153 AD2d 841). Nor is there any showing that said statements were disseminated to any prospective employers *(see, Grynberg v Alexander's, Inc.,* 133 AD2d 667, *lv denied* 70 NY2d 616). As the Court of Appeals held in *Liberman v Gelstein* (80 NY2d 429), the shield of qualified privilege may not be dissolved unless plaintiff can demonstrate that the statements were made with a high degree of awareness of the probable falsity.

In addition, we note that the statements made by Schelling would be excluded at trial as hearsay because they would not be admissions against interest receivable against SRI or the other defendants due to the fact that there is no evidence that Schelling was authorized to make the statements *(see, Loschiavo v Port Auth.,* 58 NY2d 1040, 1041; *Rhoades v Niagara Mohawk Power Corp.,* 202 AD2d 762).

We further find that plaintiff cannot cure the deficiencies in his complaint by recasting his causes of action as ones sounding in prima facie tort because such cause of action cannot be used to bootstrap the threshold deficiency in a wrongful discharge claim *(see, Ingle v Glamore Motor Sales,* 73 NY2d 183; *Hurwitch v Kercull,* 182 AD2d 1013). In addition, as to the third cause of action, there has been no showing of an intentional infliction of harm and in a prima facie tort case it must be shown that disinterested malevolence is the sole motive for an otherwise lawful act *(see, Matter of Schulz v Washington County,* 157 AD2d 948; *Smukler v 12 Lofts Realty,* 156 AD2d 161, *lv denied* 76 NY2d 701).

Therefore, for these reasons, the complaint should have been dismissed in its entirety.

Cardona, P. J., Mercure, Weiss and Yesawich Jr., JJ., concur. Ordered that the order is modified, on the law, with costs, by reversing so much thereof as partially denied defendants' motion; said motion granted and the remaining causes of action are dismissed; and, as so modified, affirmed.