**Alina NUNEZ, Plaintiff,**

v.

**A–T FINANCIAL INFORMATION, INC., James B. Andrews, Defendants.**

No. 95 Civ. 10708 (LAP).

United States District Court, S.D. New York.

Feb. 13, 1997.

William Calvin House, William C. House, P.C., New York City, for Plaintiff.

## MEMORANDUM AND ORDER
PRESKA, District Judge:

### BACKGROUND

This action arises out of an incident that plaintiff alleges took place during her employment with defendant A–T Financial Information, Inc. ("ATF"). ATF hired the plaintiff as an account executive in December, 1994 (Complaint, ¶ 7). At the time of her hiring, plaintiff was the only female account executive in ATF's sales force of eleven. (Complaint, ¶ 9). Plaintiff commenced work on January 16, 1995; she alleges that she was given less responsibility than new male hires and consequently got off to a slow start with ATF, despite her excellent performances in her previously-held sales positions. (Complaint, ¶ 12).

On June 27, 1995, ATF's New York office hosted a sales meeting for all of the company's account executives. At the end of the day, defendant Andrews ("Andrews") and seven of the account executives, including plaintiff, went out for dinner together. (Complaint, ¶ 13). Andrews, who was ATF's Vice President and Director of Sales and Marketing at the time of this incident, took advantage of the occasion to air his views concerning a possible reorganization of the company's sales and marketing force, as well as his impressions regarding each account executive's performance. He stated that he "liked" all of the account executives, but that they "had not sold shit," and that there were going to be "some changes" in personnel by the end of the third quarter. (Complaint, ¶ 13).

Andrews then addressed each account executive in turn, assessing his performance in relatively moderate, although not necessarily complimentary, terms. (Complaint, ¶ 14).

When he arrived at plaintiff, the only woman present, however, Andrews's tone radically altered. Andrews said to plaintiff, "And you, you need to suck more. You need to get your knee pads out and start sucking." (Complaint, ¶ 15). Needless to say, plaintiff experienced shock and humiliation upon hearing this. (Complaint, ¶ 16). In an attempt to change the subject and defuse a difficult situation, plaintiff suggested that since all of the account executives were likely to be fired before the end of the third quarter, they should make a bet as to who would make the most sales before then. (*Id.*). Plaintiff's attempt to lighten the atmosphere was unsuccessful, however, as Andrews's response to her suggestion was, "[a]nd your prize will be my dick." (*Id.*). Responding to plaintiff's visible discomfort in the wake of this second remark, the colleague seated next to her placed his arm around her shoulders. (Complaint, ¶ 18). Andrews, true to the form that plaintiff alleges he displayed throughout the evening in question, sneered, "Don't you two look comfortable." (Complaint, ¶ 18). Plaintiff and two colleagues then left the restaurant.

Plaintiff alleges that she reported Andrews's remarks to her immediate manager who merely responded, "That's unfortunate." (Complaint, ¶ 24). She met with the same manager once again several days after the incident and, in Andrews's office, recounted the statements made by Andrews and her reactions to them. (Complaint, ¶ 25). Plaintiff additionally met with the outside counsel charged with investigating Andrews's conduct, who advised her that she didn't have any legal claim. (Complaint, ¶ 26).

Plaintiff alleges that following the June 27 dinner, she experienced a high degree of difficulty in enlisting support from ATF for the deals that she had negotiated; in several instances, she failed to close the deal due to noncooperation from other ATF personnel. (Complaint, ¶¶ 27–31). She also noticed a deterioration in her working relationship with her colleagues and alleges that camaraderie gave way to uneasy, uncomfortable silence and isolation. (Complaint, ¶ 19).

On July 25, 1995, Andrews told plaintiff that she was "on the agenda" at an ATF Board of Directors meeting scheduled for July 31, 1995; Andrews had earlier advised plaintiff that the Board wanted to fire her for what had occurred at the June 27th dinner. (Complaint, ¶ 37). Plaintiff then sent a letter to ATF's Board indicating that she was considering legal redress. (Complaint, ¶ 38). Following unsuccessful attempts at resolution, ATF terminated the plaintiff on August 8, 1995. (Complaint, ¶ 40).

On August 23, 1995, plaintiff filed discrimination charges with the Equal Employment Opportunity Commission and on September 22, 1995, received notification of her right to sue. (Complaint, ¶ 4). On or about December 19, 1995, plaintiff filed the present action, alleging that defendants had violated 42 U.S.C. § 2000e *et seq.* and N.Y. Human Rights Law § 296. Plaintiff also raised claims of defamation, intentional infliction of emotional distress, and breach of an implied covenant of good faith and fair dealing under the common law of New York. Defendant ATF made a partial motion to dismiss, directed only at the common law causes of action. For the reasons that follow, defendant ATF's motion is granted in its entirety.

## DISCUSSION

### I. *Standard Applicable to a Motion to Dismiss*

In deciding a motion to dismiss, I must view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir. 1985). I must accept as true the factual allegations stated in the complaint, *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990), and draw all reasonable inferences in favor of the plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993), *cert. denied,* 510 U.S. 1111, 114 S.Ct. 1054, 1055, 127 L.Ed.2d 375 (1994). A motion to dismiss can only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In the present case, plaintiff is simply unable to allege a cause of action under theories of intentional infliction of emotional distress, defamation, and breach of the covenant of good faith and fair dealing, although she is fortunately not without a remedy in the event that she can prove the egregious facts that she has pleaded.

## II. *Plaintiff's Defamation Claim Requires the Pleading of Special Damages*

■ A plaintiff who sues for slander must plead special damages unless the defamatory statement falls into one of the categories of slander per se. *Sandler v. Marconi Circuit Technology Corp.*, 814 F.Supp. 263, 267 (E.D.N.Y.1993). Special damages consist of "the loss of something having economic or pecuniary value," Restatement Torts 2d, § 575, comment b, which must flow directly from the injury to reputation caused by the defamation and not from the effects of the defamation. *Matherson v. Marchello*, 100 A.D.2d 233, 235, 473 N.Y.S.2d 998 (2d Dep't 1984). To satisfy the special damages requirement, a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice. *Boyle v. Stiefel Labs., Inc.*, 204 A.D.2d 872, 612 N.Y.S.2d 469, 471 (3d Dep't), *appeal denied*, 84 N.Y.2d 803, 617 N.Y.S.2d 137, 641 N.E.2d 158 (1994).

■ In the present case, plaintiff does not seriously contend that she has met this standard. Instead, she argues that her claim falls within the "slander per se" exception and that therefore she need not plead and prove special damages. Slander per se consists of allegations (1) that plaintiff committed a crime; (2) that tend to injure plaintiff in the conduct of her trade, business, or profession; (3) that plaintiff has contracted a loathsome disease; or (4) that impute unchastity to a woman. *Matherson*, 100 A.D.2d at 236, 473 N.Y.S.2d 998. Plaintiff asserts that Andrews's statements to her, "And you, you need to suck more. You need to get out your knee pads and start sucking," both impute unchastity to her and tend to injure her in her trade, business, or profession. Plaintiff suggests that the fair interpretation of these words is that she was willing to perform fellatio on prospective customers in order to generate sales.

■ In assessing a claim of slander per se, the court must construe the allegedly defamatory statement according to its plain meaning. *Sandler*, 814 F.Supp. at 268. Innuendo is not available to enlarge the meaning of the statement beyond the significance expressed by the words themselves. *Cole Fischer Rogow, Inc. v. Carl Ally, Inc.*, 29 A.D.2d 423, 429, 288 N.Y.S.2d 556 (1st Dep't 1968), *aff'd*, 25 N.Y.2d 943, 305 N.Y.S.2d 154, 252 N.E.2d 633 (1969). With these constraints in mind, I hold that the plain import of Andrews's alleged words is that plaintiff was *unwilling* to go to such extraordinary lengths to achieve a sale and that Andrews was criticizing her reluctance. This meaning takes the statement far outside the sharply-defined categories of slander per se. *See, e.g., Morris v. Stellakis*, 27 Misc.2d 120, 121, 212 N.Y.S.2d 488 (Sup.Ct.Queens Co.1961) (holding that statements, "Where are all your men that you had in your apartment? I could tell you a few things that went on in that apartment, with her and her boyfriends," "this isn't even your own apartment" and "you had men or a man paying the rent" did not impute unchastity to a woman); *Bolton v. Strawbridge*, 156 N.Y.S.2d 722, 724 (Sup.Ct.Westchester Co.1956) (holding that the statement "you'd do anything for five dollars, so I am told in the village" did not impute unchastity to a woman); *see also Tufano v. Schwartz*, 95 A.D.2d 852, 852, 464 N.Y.S.2d 211 (2d Dep't 1983) (holding that statement by defendant to a newspaper that cabinets built and installed by plaintiff were a "total misfit" was not slander per se); *Sandler*, 814 F.Supp. at 268 (finding statement that plaintiff "had screwed up" and "had to be let go" did not injure him in his trade or profession and was not slander per se). Because the allegedly defamatory statements at issue do not qualify as slander per se and plaintiff has not pleaded special damages, the defamation claim must be dismissed for failure to state a cause of action.

### III. The Conduct in Question Is Not Outrageous Enough to Constitute Intentional Infliction of Emotional Distress

■ Under New York law, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). As the New York Court of Appeals has acknowledged, "[t]he tort is as limitless as the human capacity for cruelty." *Id.* Courts have relied on the outrageousness element to set reasonable bounds on this potentially limitless tort and have required that the plaintiff allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

■ Cases that have addressed conduct similar to that complained of in the present action make clear that plaintiff's allegations do not satisfy this rigorous standard. In *Leibowitz v. Bank Leumi Trust Co.*, 152 A.D.2d 169, 171, 548 N.Y.S.2d 513 (2d Dep't 1989), for example, the court examined the complaint of a plaintiff who was "the only Jewish female" in her department and was frequently the subject of derogatory remarks, often being called a "Hebe" or a "kike." Despite expressing "indignation ... over the use of the religious and ethnic slurs 'Hebe' and 'kike,'" the court nonetheless held that conduct that forms the basis of a cause of action for intentional infliction of emotional distress must consist of more than "mere insults, indignities, and annoyances." *Id.* at 182, 548 N.Y.S.2d 513 (quoting *Nestlerode v. Federal Ins. Co.*, 66 A.D.2d 504, 507, 414 N.Y.S.2d 398 (4th Dep't), *appeal denied*, 48 N.Y.2d 604, 421 N.Y.S.2d 1029, 396 N.E.2d 487 (1979)). Because the conduct at issue in *Leibowitz* did not rise to the re-quired threshold, the court upheld the dismissal of the emotional distress claim.

Similarly, in *Foley v. Mobil Chemical Co.*, 214 A.D.2d 1003, 1005, 626 N.Y.S.2d 906 (4th Dep't 1995), the court found that although the discrimination and sexual harassment allegedly committed by the defendants represented "wholly inappropriate" behavior, it was not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress. *Id.; see also Jaffe v. National League for Nursing*, 222 A.D.2d 233, 233, 635 N.Y.S.2d 9 (1st Dep't 1995) (holding that "a case of alleged employee harassment and intimidation, leading to forced resignation ... [fell] far short of the rigorous standard of outrageous conduct necessary to maintain a cause of action for intentional infliction of emotional distress."). The New York courts appear to require that plaintiffs allege either an unrelenting campaign of day in, day out harassment or that the harassment was accompanied by physical threats, in order to state a cognizable claim for intentional infliction of emotional distress. *See, e.g., O'Reilly v. Executone*, 121 A.D.2d 772, 773, 503 N.Y.S.2d 185 (3d Dep't 1986) (upholding an emotional distress claim by a plaintiff who was "repeatedly, intentionally, and maliciously harassed by certain male co-workers and by [defendant], her supervisor whose harassing conduct included, but was not limited to: subjecting plaintiff to sexual jokes, comments, and inquiries, sexually oriented physical contact and gestures, sexually oriented practical jokes, the posting and presence of pornographic pictures and exposing sexual artifacts to Plaintiff."); *Persaud v. Axelrod*, 1996 WL 11197, 1996 U.S.Dist. LEXIS 160, at *12 (S.D.N.Y. January 10, 1996) (finding that plaintiff's allegations that she was subjected to continuous sexual harassment, including unwanted touching and threats by the knife-wielding defendant, were sufficient to state a cause of action for intentional infliction of emotional distress).

In the present case, plaintiff's own account of Andrews's statements confirms that they took place at an isolated dinner and were unaccompanied by physical threats of any kind. Without in any way condoning his conduct, which as alleged was boorish, vul-

gar, and reprehensible, I hold that it does not rise to the level of outrageousness required by the caselaw. The claim for intentional infliction of emotional distress is therefore dismissed.

### IV. *New York Law Does Not Recognize an Implied Covenant of Good Faith and Fair Dealing in At–Will Employment Contracts*

■ ATF has also moved to dismiss plaintiff's breach of contract claim, asserting that New York law does not recognize an implied covenant of good faith and fair dealing in employment at will relationships. Plaintiff responds that the extensive caselaw cited by ATF relates only to the absence of a limitation on the employer's right to terminate an employee at will; she contends that her claim is based instead upon ATF's and Andrews's interference with her ability to perform while still employed. Plaintiff, however, is unable to point to any case in support of her view that an implied covenant is present with respect to issues other than termination in at will employment relationships.

Independent research has also failed to turn up any such case, and I am convinced that the absence of any supporting law confirms that Ms. Nunez's position is inconsistent with the policies underlying New York's rejection of an implied covenant in at will employment. As the courts within this district have repeatedly recognized, well-settled New York law holds that no implied covenant of good faith and fair dealing attaches to at-will employment contracts. *See, e.g., Boritz v. Financial Information Serv. Agency,* No. 94 Civ. 5059 (JSM), 1995 WL 464955, at *4 (S.D.N.Y.1995); *Tischmann v. ITT/Sheraton Corp.,* 882 F.Supp. 1358, 1367 (S.D.N.Y.1995); *Peterson v. Insurance Co. of N. Am.,* 822 F.Supp. 1040, 1044 (S.D.N.Y.1993). The basis for this rule is that an obligation to abide by an implied covenant of good faith and fair dealing would be inconsistent with the employer's unfettered right to terminate an at-will employee. *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 335–36, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987); *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 304–05, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

■ To impose such an obligation with respect to issues other than discharge would be equally inconsistent with the employer's unrestricted right of termination. Every contract (other than an agreement for employment at will) under New York law includes "an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." *Grad v. Roberts,* 14 N.Y.2d 70, 248 N.Y.S.2d 633, 637, 198 N.E.2d 26, 28 (1964), *quoted in Tagare v. NYNEX Network Sys. Co.,* 921 F.Supp. 1146, 1150 (S.D.N.Y.1996). In an employment at will contract, however, either party has the right to take the ultimate step to render performance impossible, because either party can terminate the relationship, at any time, for any reason. Under the circumstances, to imply a lesser obligation not to obviate performance other than by discharging the employee would be patently illogical.

The case of *Boritz v. Financial Information Servs. Agency,* No. 94 Civ. 5059 (JSM), 1995 WL 464955, at *4 (S.D.N.Y.1995) seems to rest on the same conclusions. There, Judge Martin dismissed the breach of contract claim of a discharged employee who alleged that the defendant not only unlawfully terminated him but also acted in bad faith by "creating false charges against him in an effort to prevent him from enjoying his contract rights." *Id.* Judge Knapp rejected the contract claims of a plaintiff who alleged grievances very similar to those asserted by the plaintiff in the present case, based on identical reasoning. *Kelly v. Quotron Sys., Inc.,* No. 91 Civ. 5408 (WK), 1993 WL 106048, at *2 (S.D.N.Y.1993). Because New York law does not impose an obligation of good faith and fair dealing on the parties to an at will employment agreement, the breach of contract action must be dismissed.

### CONCLUSION

Plaintiff in the present case has pleaded allegations of egregious conduct which, if proved, would surely entitle her to relief. Nonetheless, the legal theories under which

she may lay claim to that relief are not infinite. Because plaintiff can prove no set of facts in support of her claims for slander, intentional infliction of emotional distress, and breach of contract, those claims are dismissed. Counsel shall appear for a conference at 9:30 a.m. on February 14, 1997, in Courtroom 12A, 500 Pearl Street, New York, New York, to discuss the anticipated progress of plaintiff's remaining claims, including a proposed discovery schedule.

SO ORDERED.