**Jacques AGNANT, Plaintiff,**

**v.**

**Tupac SHAKUR a/k/a "Makaveli," and/or the Estate of Tupac Shakur, Death Row Records/Interscope Records, Joshua's Dream, Interscope Pearl Music, Warner–Tamerlane Publishing Corp., Suge Publishing, Hurt–M–Bad, Tommy Daugherty and Lance Pierce, Defendants.**

**No. 97 Civ. 3424(MBM).**

United States District Court,
S.D. New York.

Dec. 16, 1998.

Paul S. Brenner, New York City, for Plaintiff Jacques Agnant.

Kenneth G. Schwarz, William A. Zolla, Fischbein Badillo Wagner Harding, New York City, for Defendant Estate of Tupac Shakur.

Charles B. Ortner, Michael T. Mervis, Jared L. Gurfein, Paul, Hastings, Janofsky & Walker LLP, New York City, for Defendants Interscope Records, Interscope Pearl Music and Warner–Tamerlane Publishing Corp.

Stephen F. Huff, Tom J. Ferber, Pryor Cashman Sherman & Flynn, New York City, for Defendants Death Row Records and Suge Publishing.

## OPINION AND ORDER

MUKASEY, District Judge.

This libel case, initially filed in Supreme Court, New York County, and removed here pursuant to 28 U.S.C. §§ 1332, 1441 (1994), arises from statements allegedly made about plaintiff, Jacques Agnant, in a rap song written and performed by the late Tupac Shakur. Plaintiff sues the Estate of Tupac Shakur (the "Shakur Estate"), Interscope Records, Interscope Pearl Music, Warner–Tamerlane Publishing Corp., Death Row Records, Inc. and Suge Publishing (collectively, the "Record Company defendants"), as well as other companies and individuals allegedly involved in the production of the song. The Record Company defendants move for judgment on the pleadings or, in the alternative, summary judgment. The Shakur Estate moves for summary judgment. For the reasons stated below, defendants' motions for summary

judgment are granted, and the complaint is dismissed as to these defendants.

## I.

The following relevant facts are viewed in the light most favorable to plaintiff.[1] Prior to his murder in September 1996, Tupac Shakur was a well-known and successful rap music artist. (Compl. ¶ 3; Gurfein Decl. Ex. C)[2] In late 1993, Shakur, plaintiff and a third man were arrested and indicted for sexually assaulting a woman in a New York City hotel. (Gurfein Decl. Ex. C, at 1) Thereafter, the charges against plaintiff were severed from those against Shakur, whose case went to trial in late 1994 and resulted in a conviction. (Compl. ¶ 16; Gurfein Decl. Ex. C, at 3, 6) Several months later, plaintiff pleaded guilty to lesser charges, for which he was sentenced to three years' probation and fined $1000. (Agnant Dep. at 15–16)[3]

In December 1996, an album was released, featuring Shakur under the posthumous alias "Makaveli," titled "The Don Killuminati: The 7 Day Theory." (Compl. ¶ 14; Gurfein Decl. ¶ 6, Ex. E) The album included a song titled "Against All Odds," which contained the following lyrics, as reprinted in the complaint:

> ... know that this be the realist [sic] shit I ever wrote ... Hoping my true mother fucker know this be the realist [sic] shit I ever wrote, I heard he was a light skin stockey with a Haitian accent jewelry fast cars and known for flashing listen while I take you back and lace this rap a real live tale about a snitch named Haitian Jack, knew he was working for the fed. Same crime different trial, Nigger picture what he said and did I mention promised to pay back to me Hinchman in due time. I knew

you Bitch Nigger is listening the world is mine set me up wet me up niggers struck heard your guns bust but you tricks never shook me up. Touch one of mine or everything I owe I will destroy everything you touch. Play the game nigger all out warfare eye for eye last words to a bitch nigger why you lie, now you got to watch your back now watch your front now here we come gun shot to tut now you are stuck, fuck the rap game this is M.O.B. so believe me, we are enemies I go against all odds. I hope my true mother fuckers know this be the realist shit I ever wrote against all odds.

(Compl. ¶ 15) To date, the album has sold approximately 7 million copies in the United States and 28 million copies worldwide. (*Id.* ¶ 14)

In his complaint, plaintiff alleges that the above lyrics refer to him and, as understood by the general public, state that he "was working as an undercover federal informant" against Shakur in relation to the rap artist's 1994 trial. (*Id.* ¶ 16) As a result of the lyrics, plaintiff alleges, he "has been unable to find employment commensurate with his training and experience, and has had his reputation destroyed in the community." (*Id.* ¶ 19) He seeks $200 million in compensatory damages as well as punitive damages. (*Id.* ¶ 20)

The allegations in the complaint notwithstanding, the evidence reveals that plaintiff is currently employed "in an executive capacity" at a record company called Undeas Entertainment ("Undeas"). (Rivera Aff. ¶ 1) In affidavits submitted in opposition to these motions, plaintiff and the president of Undeas, Lance Rivera, imply that plaintiff got his current job after the release of "The Don Killuminati: The 7 Day Theory," and only

---

1. Plaintiff failed to respond to defendants' Local Rule 56.1 statements. As such, the material facts contained in defendants' statements are deemed admitted as a matter of law. *See* Local Civil Rule 56.1(a), Local Civil Rules of the U.S. District Courts for the Southern and Eastern Districts of N.Y. ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998).

2. "Compl." refers to plaintiff's Verified Complaint, dated March 19, 1997, and filed in Supreme Court, New York County. It is attached as an exhibit to the Declaration of Jared L. Gurfein. (*See* Gurfein Decl. Ex. A)

3. "Agnant Dep." refers to plaintiff's pretrial deposition, taken on October 17, 1997. Select pages of the deposition transcript are attached as exhibits to the Declaration of Jared L. Gurfein, the Affidavit of Kenneth G. Schwarz and the Declaration of Michael T. Mervis. (*See* Gurfein Decl. Ex. B; Schwarz Aff. Ex. B; Mervis Decl. Exs. B, D)

then because plaintiff and Rivera were "childhood friends." (*Id.* ¶¶ 2, 4; Agnant Aff. ¶ 9) In his pretrial deposition, taken on October 17, 1997, however, plaintiff testified that he had worked continuously for Undeas, as "Director of A & R," beginning in late 1994 or early 1995. (Agnant Dep. at 51–52, 111) Plaintiff testified that, in 1995 and 1996, he had received approximately $120,000 in compensation from Undeas, and that he expected to receive a similar amount, if not more, for 1997. (*Id.* at 52, 57–60, 74) Moreover, plaintiff acknowledged that his employment contract prohibited him from seeking income from any source other than Undeas and that, as of the time of his deposition, he had not searched for any additional work or income. (*Id.* at 54, 58, 60) Plaintiff conceded also that his employer had not disciplined or threatened him in the period following the release of Shakur's album. (*Id.* at 61) Finally, he testified that he was happy working for Undeas and had no intention of seeking other employment. (*Id.* at 60)

## II.

As noted, the Record Company defendants move for judgment on the pleadings or, in the alternative, for summary judgment. Because the Shakur Estate moves solely for summary judgment, and because I have considered materials outside the pleadings, *see* Fed.R.Civ.P. 12(c), I will treat both motions as motions for summary judgment.

Summary judgment is mandated when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, "the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir.1994). Nevertheless, Rule 56 jurisprudence is clear in "provid[ing] that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party, therefore, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Conclusory allegations will not suffice to create a genuine issue." *Delaware & Hudson Ry. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990).

## III.

In their respective motion papers, defendants raise four arguments in favor of summary judgment: first, that the statements at issue are not capable of a defamatory meaning; second, that even if the statements are capable of a defamatory meaning, the statements are not libelous *per se* and plaintiff has failed to plead and cannot prove special damages, as required; third, that the statements are protected opinion; and fourth, that plaintiff is a public figure and the statements implicate a matter of public concern, requiring plaintiff to plead and prove actual malice or gross irresponsibility, which he has not done and cannot do. The Shakur Estate raises as an additional argument that plaintiff failed to comply with the necessary provisions of California and New York probate law regarding claims against estates. Because I conclude that summary judgment is warranted on the basis of defendants' first two arguments, it is unnecessary for me to consider the others.

Libel law provides redress for injuries to a person's reputation caused by statements which tend to "expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Foster v. Churchill*, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 587, 665 N.E.2d 153 (1996) (internal quotation marks and citations omitted); *accord Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir.1997). Although it is the jury's province to determine whether the plaintiff has actually been defamed, a threshold issue for resolution by the court is

"whether the statement alleged to have caused plaintiff an injury is reasonably susceptible to the defamatory meaning imputed to it." *Levin,* 119 F.3d at 195 (citing *James v. Gannett Co.,* 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871, 874, 353 N.E.2d 834 (1976)); *see also Aronson v. Wiersma,* 65 N.Y.2d 592, 594, 493 N.Y.S.2d 1006, 1007, 483 N.E.2d 1138 (1985). The court's threshold inquiry is guided by both the meaning of the words as they would commonly be understood and the context in which they appear. *See Levin,* 119 F.3d at 195.

■ Here, plaintiff alleges that Shakur's song "Against All Odds" falsely accuses him of "working as an undercover federal informant" and that, as a result of this accusation, he has suffered damage to his reputation and been placed in danger. (Compl.¶¶ 18–19) Even accepting that the statements at issue are false and caused plaintiff injury, however, plaintiff's claim must be rejected. In order to be libelous under New York law, a false statement must hold the plaintiff up to ridicule or scorn in the minds of "right-thinking persons"; those who would think ill of one who legitimately cooperates with law enforcement officials are not such persons. *Cf. Restatement (Second) of Torts* § 559, cmt. e (1977) ("The fact that a communication tends to prejudice another in the eyes of even a substantial group is not enough if the group is one whose standards are so anti-social that it is not proper for the courts to recognize them."); W. Page Keeton *et al., Prosser and Keeton on Torts* § 111, at 778 (5th ed. 1984) ("The line is drawn . . . when the group who will be unfavorably impressed becomes . . . one whose standards are so clearly anti-social that the court may not properly consider them.").

■ This court is not the first to face the issue of whether falsely accusing one of acting as an informant can be defamatory. So far as I can tell, every other court to have considered the question, save one, has held, as a matter of law, that such a statement cannot be defamatory, the sole exception being the Scottish court in the nineteenth-century case of *Graham v. Ray,* 13 Sess. Cas. 634, 636 (1851). *See Burrascano v. Levi,* 452 F.Supp. 1066, 1072–73 (D.Md.1978), *aff'd sub nom Burrascano v. U.S. Attorney Gen.,* 612 F.2d 1306 (4th Cir.1979); *Saunders v. Board of Directors, WHYY–TV,* 382 A.2d 257, 259 (Del.Super.Ct.1978); *Heimerle v. Charter Books,* 11 Media L. Rep. (BNA) 1278, 1279 (Sup.Ct. N.Y. County 1984); *Connelly v. McKay,* 176 Misc. 685, 28 N.Y.S.2d 327, 329–30 (Sup.Ct. N.Y. County 1941); *Rose v. Borenstein,* 119 N.Y.S.2d 288, 289–90 (N.Y.City Ct.1953); *see also Danias v. Fakis,* 261 A.2d 529, 531 (Del.Super.Ct.1969); *Hallock v. Miller,* 2 Barb. 630 (1848); *cf.* Daniel More, *Informers Defamation and Public Policy,* 19 Ga. J. Int'l & Comp. L. 503, 504–09, 524–26 (1989) (discussing cases from the United States and other jurisdictions).[4] Notably, the leading case, *Connelly,* is a New York case.

In *Connelly,* the owner of a service station and rooming house patronized primarily by interstate truck drivers alleged slander based on a statement that he was identifying to the Interstate Commerce Commission (the "ICC") truck drivers who were violating ICC rules. *See Connelly,* 28 N.Y.S.2d at 328. The court assumed *arguendo* that the plaintiff's reputation and livelihood had been adversely affected and that the slander alleged conduct that was considered heinous within the plaintiff's community. *See id.* at 328–29.

---

**4.** Several law review commentators have criticized the holdings in these cases on the ground, for example, that they provide "an open invitation to judges to assess which subgroups within society are or are not worthy of the law's attention and respect." Lyrissa Barnett Lidsky, *Defamation, Reputation, and the Myth of Community,* 71 Wash. L.Rev. 1, 20 (1996); *see id.* at 20–25; More, *supra, passim; see also* Randy M. Fogle, *Is Calling Someone "Gay" Defamatory?: The Meaning of Reputation, Community Mores, Gay Rights, and Free Speech,* 3 Law & Sex 165, 171–74 (1993); *cf.* Robert C. Post, *The Social Foun-*

*dations of Defamation Law: Reputation and the Constitution* 74 Calif. L.Rev. 691 (1986) (discussing *Connelly* and other informant defamation cases and implicitly criticizing them). These commentators are free to comment and criticize, but unless and until they become judges in jurisdictions whose law applies, and have occasion to rule rather than merely opine, I am free to disobey their prescriptions. Moreover, the task of deciding what is or is not defamatory necessarily involves a court in a consideration of both community norms and the policy implications of alternative rulings.

Nevertheless, the court dismissed the complaint:

> The language attributed to the defendant cannot under any circumstances be held defamatory, and not being defamatory is not actionable.... It is true that informers are not always held in too high esteem, and violators of the law might have good cause to shun one who engaged in such practice, but, nevertheless, such acts cannot constitute a foundation upon which to build an action for slander.... To hold otherwise would be contrary to the public interest, in that it would penalize the law-abiding citizen and give comfort to the law violator. It would impede law enforcement for the benefit of the anti-social.

*Id.* at 329. Insofar as plaintiff alleges libel based on the accusation that he served as an informant, the complaint must be dismissed.

## IV.

My decision that plaintiff cannot maintain an action for libel based on the accusation that he was an informant does not end the inquiry, however. In his memorandum of law, plaintiff raises for the first time additional allegations of libel stemming from the lyrics in "Against All Odds." According to plaintiff, the lyrics accuse plaintiff "of shooting Tupac Shakur, of informing falsely upon him to the District Attorney's Office, of lying to him, and of trying to hurt his musical career." (Pl. Mem. in Opp. at 1)[5] In particular, plaintiff argues that: (1) Shakur's statement "the world is mine set me up wet me up niggers struck heard your guns bust but you tricks never shook me up" falsely alleges "that plaintiff shot him, tried to hurt his recording career, and was generally dishonest," (*id.* at 6); (2) the statement "all out warfare eye for eye last words to a bitch nigger why you lie" falsely accuses plaintiff of lying to authorities and to Shakur, (*id.* at 6–7); and (3) the phrase "and did I mention promised to pay back to me Hinchman in due time" refers "to the fact that plaintiff promised Shakur a recording deal with Hinchman Records, but did not come through on the promise." (*Id.* at 7) In their reply papers,

defendants contend, first, that plaintiff's new arguments should not be considered because they were raised for the first time in his memorandum of opposition, after the close of discovery, and, second, that even if the new arguments are considered they are deficient as a matter of law.

Although plaintiff's complaint quoted Shakur's lyrics at some length, the accusation that plaintiff worked as an informant was the only feature of the lyrics singled out as defamatory. (*See* Compl. ¶ 16) Indeed, the complaint itself stated that "[t]he remainder of the offensive words relate to how defendant TUPAC [Shakur] would get revenge against the plaintiff." (*Id.*) In addition, plaintiff acknowledged at his deposition that the accusation he was an informant was "basically the heart" of his position in this case. (Agnant Dep. at 87) Finally, in a letter to defendants' counsel dated December 11, 1997—only eight days before the Record Company defendants served their present motion—plaintiff's counsel discussed exclusively the allegation regarding plaintiff's working as an informant and implicitly accepted that the case would stand or fall on whether this statement was defamatory. (*See* Mervis Decl. Ex. E)

■ Were I to treat plaintiff's arguments as a *pro tanto* motion for leave to amend the complaint, I would be on firm ground in refusing to consider plaintiff's new arguments and granting summary judgment to defendants, both because such belated amendment would prejudice defendants, *cf. Ansam Assoc., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985) (upholding a denial of leave to amend a complaint in part because "permitting the proposed amendment would have been especially prejudicial given the fact that discovery had already been completed and [the defendant] had already filed a motion for summary judgment"), and, more significantly, because such amendment would be futile. *Cf. Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that it is not an abuse of discretion to deny leave to amend where such amendment would be futile);

---

**5.** Plaintiff neglected to number the pages of his memorandum of law. Page citations refer to the pages as they would have been numbered, beginning with the caption page as page one.

*Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied."). In order to make out a libel claim under New York law, a plaintiff must show that the defendant published to a third party (1) a false and defamatory statement (2) which was "of and concerning" the plaintiff (3) with the requisite degree of fault—the degree of which depends on the status of the libeled party and the subject matter of the statement, and (4) injury to the plaintiff. *See Chaiken v. VV Publishing Corp.*, 907 F.Supp. 689, 695 (S.D.N.Y. 1995), *aff'd*, 119 F.3d 1018 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998); *see also Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir.1993). Even assuming that plaintiff could satisfy the first three elements of his prima facie case with respect to his new allegations of libel—an assumption which defendants contend, with some justification, is unwarranted—plaintiff's action would fail because he has not pleaded and cannot prove the requisite injury.

■ Under New York law, a plaintiff who sues for libel must plead and prove special damages unless the allegedly defamatory statement falls into one of the categories of libel *per se*, such as allegations that plaintiff committed a crime or allegations that tend to injure plaintiff in the conduct of his trade, business or profession. *See, e.g., Nunez v. A–T Financial Information, Inc.*, 957 F.Supp. 438, 441 (S.D.N.Y.1997). In the present case, plaintiff contends that the allegedly defamatory statements are libelous *per se* insofar as they accuse him of lying to law enforcement officials, shooting Shakur and reneging on his promise to secure a contract for Shakur with Hinchman Records. Such a " 'strained, unreasonable and unjustified' interpretation," however, cannot form the basis of an action for libel. *Rappaport v. VV Publ'g Corp.*, 163 Misc.2d 1, 618 N.Y.S.2d 746, 748 (Sup.Ct. N.Y. County 1994) (quoting *Tracy v.. Newsday, Inc.*, 5 N.Y.2d 134, 137, 182 N.Y.S.2d 1, 4, 155 N.E.2d 853 (1959)), *aff'd*, 223 A.D.2d 515, 637 N.Y.S.2d 109 (1st Dep't 1996). Moreover, no reasonable jury could interpret the disputed lyrics in the manner urged by plaintiff without knowing—

at a minimum—that plaintiff was arrested along with Shakur, that Shakur was shot in New York and that "Hinchman" was a reference to Hinchman Records. It is well established in New York, however, that statements cannot be libelous *per se* "if reference to extrinsic facts is necessary to give them a defamatory import," *Aronson*, 65 N.Y.2d at 594–95, 493 N.Y.S.2d at 1008, 483 N.E.2d 1138, or if "innuendo" is needed "to enlarge" their meaning "beyond the significance expressed by the words themselves." *Nunez*, 957 F.Supp. at 441. Indeed, this is true even where the alleged defamation implicates a matter of "common knowledge." *Sterling Doubleday Enter., L.P. v. Marro*, 238 A.D.2d 502, 503–04, 656 N.Y.S.2d 676, 678 (2d Dep't 1997).

■ Because the allegedly defamatory statements are not libelous *per se*, plaintiff would be required to plead and prove special damages to prevail on his libel claim. *See, e.g., Nunez*, 957 F.Supp. at 441. Special damages consist of " 'the loss of something having economic or pecuniary value,' which must flow directly from the injury to reputation caused by the defamation and not from the effects of the defamation." *Id.* (quoting *Restatement (Second) of Torts, supra*, § 575, cmt. b). To satisfy the special damages requirement, a plaintiff must set forth an itemized account of his losses; round figures, general allegations of a dollar amount or boilerplate allegations of some impairment to business reputation are insufficient. *See id.; Newsday, Inc. v. C.L. Peck Contractor, Inc.*, 87 A.D.2d 326, 328, 451 N.Y.S.2d 415, 417 (1st Dep't 1982).

■ Plaintiff more or less concedes that he has not pleaded special damages. The complaint alleges merely that "plaintiff has been unable to find employment commensurate with his training and experience, and has had his reputation destroyed in the community." (Compl.¶ 19) As stated, however, such a general allegation does not satisfy the requirement of pleading special damages, and plaintiff's new claims would therefore fail as a matter of law. Further, it appears from the record that plaintiff could not prove special damages even had his pleading sufficed.

As he conceded at his pretrial deposition, plaintiff's salary and standing at Undeas were unaffected by the alleged libel, and he was prohibited by his own employment contract from seeking additional income elsewhere. To the extent that plaintiff's affidavits submitted in connection with the present motions contradict this earlier testimony, they may be disregarded. *See, e.g., Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995) (" '[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.' ") (quoting *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987)).

In short, plaintiff's libel action would be without merit as a matter of law whether or not I granted him leave to amend the complaint to include his newly raised allegations. Consequently, summary judgment is granted.

\*   \*   \*   \*   \*   \*

For the foregoing reasons, defendants' motions for summary judgment are granted, and the complaint is dismissed as to these defendants.

**SO ORDERED.**